# RENO, ATTORNEY GENERAL, ET AL. *v.* KORAY

No. 94–790.  Argued April 24, 1995—Decided June 5, 1995

REHNQUIST, C. J., delivered the opinion of the Court, in which O'CON-NOR, SCALIA, KENNEDY, SOUTER, THOMAS, GINSBURG, and BREYER, JJ., joined. GINSBURG, J., filed a concurring opinion, *post*, p. 65. STEVENS, J., filed a dissenting opinion, *post*, p. 66.

*Miguel A. Estrada* argued the cause for petitioners. With him on the briefs were *Solicitor General Days, Assistant Attorney General Harris, Deputy Solicitor General Dreeben,* and *Joseph Douglas Wilson.*

*Irwin Rochman* argued the cause and filed a brief for respondent.*

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

Title 18 U. S. C. § 3585(b) provides that a defendant generally must "be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences." Before the commencement of respondent's federal sentence, a Federal Magistrate Judge "released" him on bail pursuant to the Bail Reform Act of 1984 and ordered him confined to a community treatment center. The question presented is whether respondent was in "official detention," and thus entitled to a sentence credit under § 3585(b), during the time he spent at the treatment center. We hold that he was not.

On April 23, 1991, respondent Ziya Koray was arrested for laundering monetary instruments in violation of 18 U. S. C. § 1956(a)(1). On June 18, 1991, he pleaded guilty to that charge in the United States District Court for the District of Maryland. One week later, on June 25, 1991, a Federal Magistrate Judge entered a "release order" pursuant to 18 U. S. C. § 3142(c), ordering respondent released on bail, pending sentencing, into the custody of the Pretrial Services

---

*Charles D. Weisselberg, Michael J. Brennan,* and *Dennis E. Curtis* filed a brief for the University of Southern California Law Center's Post-Conviction Justice Project as *amicus curiae.*

Agency. The order required that he be "confined to [the] premises" of a Volunteers of America community treatment center without "authoriz[ation] to leave for any reason unless accompanied" by a Government special agent. On October 22, 1991, the District Court sentenced respondent to 41 months' imprisonment. Respondent remained at the Volunteers of America facility until November 25, 1991, the day he reported to the Allenwood Federal Prison Camp to serve his sentence.

Respondent requested the Bureau of Prisons (BOP or Bureau) to credit toward his sentence of imprisonment the approximately 150 days he spent at the Volunteers of America community treatment center between June 25 and November 25, 1991. Relying on its established policy, BOP refused to grant the requested credit. After exhausting his administrative remedies, respondent filed a petition for habeas corpus in the United States District Court for the Middle District of Pennsylvania seeking credit under 18 U. S. C. § 3585 for the time he spent at the community treatment center. The District Court denied the petition, finding that respondent's stay at the center did not constitute "official detention" within the meaning of 18 U. S. C. § 3585(b).

The Court of Appeals for the Third Circuit reversed. 21 F. 3d 558 (1994). It acknowledged that the overwhelming majority of the Courts of Appeals "have concluded that section 3585 . . . does not require the Bureau to credit presentenced defendants whose bail conditions allowed them to be confined outside of Bureau of Prison[s] facilities." *Id.*, at 561. The court declined, however, to defer to the Bureau's view—that time spent under highly restrictive conditions while "released" on bail is not " 'official detention' " under § 3585(b) because a " 'released' " defendant is not subject to the Bureau's control. *Id.*, at 562–565. Instead, the court reasoned that § 3585(b)'s " 'official detention' " language need not be read "as if it provided 'official detention *by the Attorney General or the Bureau of Prisons,*' " since "there is noth-

ing in the statute which requires or suggests that a defendant must be under the detention of the Bureau," and since "[a] court may 'detain' a person as 'official[ly]' as the Attorney General." *Id.*, at 563–564. Concluding that "'official detention' for purposes of credit under 18 U. S. C. § 3585 includes time spent under conditions of jail-type confinement," *id.*, at 567, the Court of Appeals remanded the case for a determination whether respondent was in "jail-type confinement" during his stay at the Volunteers of America community treatment center.

We granted the Government's petition for certiorari to resolve a conflict among the Courts of Appeals on the question whether a federal prisoner is entitled to credit against his sentence under § 3585(b) for time when he was "released" on bail pursuant to the Bail Reform Act of 1984.[1] 513 U. S. 1106 (1995). We now reverse.

---

[1] Compare *Dawson* v. *Scott,* 50 F. 3d 884, 887–888 (CA11 1995) (time spent in halfway house and safe house while released on bond not creditable toward sentence); *Moreland* v. *United States,* 968 F. 2d 655, 657–660 (CA8) (en banc) (time spent in halfway house while released on bond not creditable toward sentence), cert. denied, 506 U. S. 1028 (1992); *United States* v. *Edwards,* 960 F. 2d 278, 282–283 (CA2 1992) (time spent in home confinement under electronic monitoring while released on bond not creditable toward sentence); *Pinedo* v. *United States,* 955 F. 2d 12, 14 (CA5 1992) *(per curiam)* (time spent on bail prior to trial not creditable toward sentence); *United States* v. *Becak,* 954 F. 2d 386, 387–388 (CA6) (time spent at mother's house under conditions of release while released on bond not creditable toward sentence), cert. denied, 504 U. S. 945 (1992); *United States* v. *Zackular,* 945 F. 2d 423, 425 (CA1 1991) (time spent in home confinement prior to sentencing not creditable toward sentence); *United States* v. *Insley,* 927 F. 2d 185, 186 (CA4 1991) (time spent in home confinement while released on appeal bond not creditable toward sentence); *United States* v. *Woods,* 888 F. 2d 653, 655–656 (CA10 1989) (time spent at halfway house while released on bond not creditable toward sentence), cert. denied, 494 U. S. 1006 (1990), with *Mills* v. *Taylor,* 967 F. 2d 1397, 1400 (CA9 1992) (time spent in community treatment center while released on bail creditable toward sentence where "conditions of release approach[ed] those of incarceration").

Title 18 U. S. C. § 3585 determines when a federal sentence of imprisonment commences and whether credit against that sentence must be granted for time spent in "official detention" before the sentence began.   It states:

"Calculation of a term of imprisonment

"(a) COMMENCEMENT OF SENTENCE.—A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

"(b) CREDIT FOR PRIOR CUSTODY.—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in *official detention* prior to the date the sentence commences—

"(1) as a result of the offense for which the sentence was imposed; or

"(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

"that has not been credited against another sentence." 18 U. S. C. § 3585 (emphasis added).

In *United States* v. *Wilson*, 503 U. S. 329, 337 (1992), we specifically noted Congress' use of the term " 'official detention' " in § 3585(b), but we had no occasion to rule on the meaning of that term.   We must do so today.[2]

---

[2] Our task is strictly one of statutory interpretation.   Respondent argued in the District Court that § 3585 violated equal protection principles by treating pretrial defendants differently than postsentenced defendants. App. 23.   The District Court rejected this argument.   App. to Pet. for Cert. A–28.   Respondent waived his equal protection argument in the Third Circuit, see 21 F. 3d 558, 559, n. 1 (1994), and he has not renewed it here.   In an *amicus curiae* brief filed with this Court, University of Southern California Law Center's Post-Conviction Justice Project raises a similar equal protection argument, see Brief for USC Law Center's Post-Conviction Justice Project as *Amicus Curiae* 20–23, but that argu-

The Government contends that the phrase "official detention" in § 3585(b) refers to a court order detaining a defendant and committing him to the custody of the Attorney General for confinement. Respondent, on the other hand, argues that the phrase "official detention" includes the restrictive conditions of his release on bail because the Federal Magistrate's bail order was "official" and significantly curtailed his liberty. Viewing the phrase in isolation, it may be said that either reading is plausible. But it is a "fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used." *Deal* v. *United States*, 508 U. S. 129, 132 (1993). After examining the phrase "official detention" in this light, we believe the Government's interpretation is the correct one.

Section 3585(b) provides credit for time "spent in official detention *prior to the date the sentence commences*," 18 U. S. C. § 3585(b) (emphasis added), thus making clear that credit is awarded only for *presentence* restraints on liberty. Because the Bail Reform Act of 1984, 18 U. S. C. § 3141 *et seq.*, is the body of law that authorizes federal courts to place presentence restraints on a defendant's liberty, see § 3142(a) (authorizing courts to impose restraints on the defendant "pending trial"); § 3143(a) (authorizing courts to impose restraints while the defendant "is waiting imposition or execution of sentence"), the "official detention" language of § 3585(b) must be construed in conjunction with that Act. This is especially so because the Bail Reform Act of 1984 was enacted in the same statute as the Sentencing Reform Act of

---

ment is not properly before the Court. See *United Parcel Service, Inc.* v. *Mitchell*, 451 U. S. 56, 60, n. 2 (1981) (noting that this Court does not decide issues raised by *amici* that were not decided by the court of appeals or argued by the interested party); *Bell* v. *Wolfish*, 441 U. S. 520, 531, n. 13 (1979) (same).

1984, of which § 3585 is a part.[3]   See *Gozlon-Peretz* v. *United States,* 498 U. S. 395, 407–408 (1991) ("It is not uncommon to refer to other, related legislative enactments when interpreting specialized statutory terms," since Congress is presumed to have "legislated with reference to" those terms).

The Bail Reform Act of 1984 provides a federal court with two choices when dealing with a criminal defendant who has been "charged with an offense" and is awaiting trial, 18 U. S. C. § 3142(a), or who "has been found guilty of an offense and . . . is awaiting imposition or execution of sentence," 18 U. S. C. § 3143(a)(1) (1988 ed., Supp. V).   The court may either (1) "release" the defendant on bail or (2) order him "detained" without bail.   A court may "release" a defendant subject to a variety of restrictive conditions, including residence in a community treatment center.   See §§ 3142(c) (1)(B)(i), (x), and (xiv).   If, however, the court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," § 3142(e), the court "shall order the detention of the person," *ibid.,* by issuing a "detention order" "direct[ing] that the person be committed to the custody of the Attorney General for confinement in a corrections facility," § 3142(i)(2).   Thus, under the language of the Bail Reform Act of 1984, a defendant suffers "detention" only when committed to the custody of the Attorney General; a defendant admitted to bail on restrictive conditions, as respondent was, is "released."   See *Dawson* v. *Scott,* 50 F. 3d 884, 889–890, and nn. 11–12 (CA11 1995); *Moreland* v. *United States,* 968 F. 2d 655, 659–660 (CA8), cert. denied, 506 U. S. 1028 (1992); 968 F. 2d, at 661–663

---

[3] See Comprehensive Crime Control Act of 1984, Pub. L. 98–473, Tit. II, 98 Stat. 1976.   The provisions of the Comprehensive Crime Control Act of 1984 relating to bail are known as the Bail Reform Act of 1984.   Pub. L. 98–473, Tit. II, ch. I, 98 Stat. 1976.   The provisions relating to sentencing, including the credit provision of § 3585(b), are known as the Sentencing Reform Act of 1984.   Pub. L. 98–473, Tit. II, ch. II, 98 Stat. 1987.

(Loken, J., concurring); *United States* v. *Becak*, 954 F. 2d 386, 388 (CA6), cert. denied, 504 U. S. 945 (1992).

Section 3585(a) and related sentencing provisions confirm this interpretation. Section 3585(a) provides that a federal sentence "commences" when the defendant is received for transportation to or arrives at "the official detention facility at which the sentence is to be served." Title 18 U. S. C. § 3621, in turn, provides that the sentenced defendant "shall be committed to the custody of the Bureau of Prisons," § 3621(a), which *"may designate any available penal or correctional facility* . . . , whether maintained by the Federal Government or otherwise . . . , that the Bureau determines to be appropriate and suitable," § 3621(b) (emphasis added). The phrase "official detention facility" in § 3585(a) therefore must refer to a correctional facility designated by the Bureau for the service of federal sentences, where the Bureau retains the discretion to "direct the transfer of a prisoner from one penal or correctional facility to another." § 3621(b).

This reading of § 3585(a) is reinforced by other provisions governing the administration of federal sentences. For example, § 3622 gives the Bureau authority to release a prisoner from the place of his imprisonment for a limited period to "participate in a training or educational program in the community while continuing in official detention at the prison facility," § 3622(b), or to "work at paid employment in the community while continuing in official detention at the penal or correctional facility," § 3622(c). Because the words "official detention" should bear the same meaning in subsections (a) and (b) of § 3585 as they do in the above related sentencing statutes, see *Estate of Cowart* v. *Nicklos Drilling Co.*, 505 U. S. 469, 479 (1992) ("[T]he basic canon of statutory construction [is] that identical terms within an Act bear the same meaning"), credit for time spent in "official detention" under § 3585(b) is available only to those defendants who were detained in a "penal or correctional facility," § 3621(b), and who were subject to BOP's control.

The context and history of § 3585(b) also support this view. As for context, § 3585(b) reduces a defendant's "imprisonment" by the amount of time spent in "official detention" before his sentence, strongly suggesting that the period of presentence "detention" must be equivalent to the "imprisonment" itself. It would be anomalous to interpret § 3585(b) to require sentence credit for time spent confined in a community treatment center where the defendant is not subject to BOP's control, since Congress generally views such a restriction on liberty as part of a sentence of "probation," see 18 U. S. C. §§ 3563(b)(10), (12), and (14), or "supervised release," see § 3583(d), rather than part of a sentence of "imprisonment." See *United States* v. *Zackular*, 945 F. 2d 423, 425 (CA1 1991).

With respect to history, § 3585(b)'s predecessor, 18 U. S. C. § 3568 (1982 ed.) (repealed), required the Attorney General to award sentence credit for "any days spent *in custody* in connection with the offense or acts for which sentence was imposed." (Emphasis added.) The Courts of Appeals uniformly held that the phrase "in custody" did not allow sentence credit because of restrictions placed on a defendant's liberty as a condition of release on bail. See *Polakoff* v. *United States*, 489 F. 2d 727, 730 (CA5 1974) (time spent on "highly restricted bond" not creditable as "'custody'"); *United States* v. *Robles*, 563 F. 2d 1308, 1309 (CA9 1977) ("[T]ime spent on bail or on bond pending appeal is not time served 'in custody'"), cert. denied, 435 U. S. 925 (1978); *Ortega* v. *United States*, 510 F. 2d 412, 413 (CA10 1975) ("'custody'" refers to "actual custodial incarceration," not "the time a criminal defendant is free on bond"); *United States* v. *Peterson*, 507 F. 2d 1191, 1192 (CADC 1974) ("'in custody'" does "not refer to the stipulations imposed when a defendant is at large on conditional release"). In 1984, Congress enacted § 3585(b) and altered § 3568 by, *inter alia*, "replac[ing] the term 'custody' with the term 'official detention.'" *Wilson*, 503 U. S., at 337; see also

18 U. S. C. § 3585(b). In thus rewording the credit statute, however, nothing suggests that Congress disagreed with the Courts of Appeals' rule denying credit to defendants who had been released on bail. To the contrary, Congress presumably made the change to conform the credit statute to the nomenclature used in related sentencing provisions, see 18 U. S. C. §§ 3585(a) and 3622, and in the Bail Reform Act of 1984. See *Moreland,* 968 F. 2d, at 662, and n. 5 (Loken, J., concurring).

The Bureau, as the agency charged with administering the credit statute, see *Wilson, supra,* at 334–335, likewise has interpreted § 3585(b)'s "official detention" language to require credit for time spent by a defendant under a § 3142(e) "detention order," but not for time spent under a § 3142(c) "release order," no matter how restrictive the conditions.[4] As we have explained, see *supra,* at 56–60, the

---

[4] The Bureau's view of § 3585(b) is explained in U. S. Dept. of Justice, Bureau of Prisons Program Statement No. 5880.28(c) (July 29, 1994), which reads as follows:

"Prior Custody Time Credit. The [Sentencing Reform Act] includes a new statutory provision, 18 U. S. C. § 3585(b), that pertains to 'credit for prior custody' *and is controlling for making time credit determinations for sentences imposed under the SRA. . . .*

*"Definitions:*

"Official detention. 'Official detention' is defined, for purposes of this policy, as time spent under a federal detention order. This also includes time spent under a *detention* order when the court has *recommended* placement in a less secure environment or in a community based program as a condition of presentence detention. A person under these circumstances remains in 'official detention,' subject to the discretion of the Attorney General and the U. S. Marshals Service with respect to the place of detention. Those defendants placed in a program and/or residence as a condition of detention are subject to removal and return to a more secure environment at the discretion of the Attorney General and the U. S. Marshals Service, and further, remain subject to prosecution for escape from detention for any unauthorized absence from the program/residence. Such a person is not similarly situated with persons conditionally *released*

Bureau's interpretation is the most natural and reasonable reading of § 3585(b)'s "official detention" language. It is true that the Bureau's interpretation appears only in a "Program Statemen[t]"—an internal agency guideline—rather than in "published regulations subject to the rigors of the Administrative Procedur[e] Act, including public notice and comment." 21 F. 3d, at 562. But BOP's internal agency guideline, which is akin to an "interpretive rule" that "do[es] not require notice and comment," *Shalala* v. *Guernsey Memorial Hospital,* 514 U. S. 87, 99 (1995), is still entitled to some deference, cf. *Martin* v. *Occupational Safety and Health Review Comm'n,* 499 U. S. 144, 157 (1991), since it is a "permissible construction of the statute," *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.,* 467 U. S. 837, 843 (1984).

Respondent, as we have indicated, disagrees with the above interpretation of § 3585(b). He contends that the "plain meaning" of the phrase "official detention" includes the restrictive conditions of his confinement, even though he

---

from detention with a requirement of program participation and/or residence.

"A defendant is not eligible for any credits while *released* from detention. Time spent in residence in a community corrections center as a result of the *Pretrial Services Act of 1982* (18 U. S. C. § 3152–3154), or as a result of a condition of bail or bond (18 U. S. C. § 3141–3143), is not creditable as presentence time. A condition of bail or bond which is 'highly restrictive,' and that includes 'house arrest', 'electronic monitoring' or 'home confinement'; or such as requiring the defendant to report daily to the U. S. Marshal, U. S. Probation Service, or other person; is not considered as time in official detention. Such a defendant is not subject to the discretion of the U. S. Attorney General, the Bureau of Prisons, or the U. S. Marshals Service, regarding participation, placement, or subsequent return to a more secure environment, and therefore is not in a status which would indicate an award of credit is appropriate (see *Randall* v. *Whelan,* 938 F. 2d 522 (4th Cir. 1991) and *U. S.* v. *Insley,* 927 F. 2d 185 (4th Cir. 1991). Further, the government may not prosecute for escape in the case of an unauthorized absence in such cases, as the person has been lawfully *released* from 'official detention.'" (Emphasis in original.)

was released on bail. This contention is a plausible one if the phrase is read in isolation: respondent was subjected to restrictive conditions when released on bail, these conditions were imposed by a court order, and his sojourn in the community treatment center therefore amounted to "official detention." But even without reference to the context of the language and the history of the statute, respondent's is not the only plausible interpretation of the language; it would be too much to say that the statute "cannot bear the interpretation adopted by" the Bureau. *Sullivan* v. *Everhart*, 494 U. S. 83, 91–92 (1990). And in light of the foregoing textual and historical analysis, the initial plausibility of respondent's reading simply does not carry the day.

Respondent also argues it is improper to focus on the release/detention dichotomy of the Bail Reform Act of 1984 to construe § 3585(b)'s "official detention" language because a defendant "released" on bail may be subjected to conditions (under 18 U. S. C. § 3142(c)(1)(B)(xiv)) that are just as onerous as those faced by "detained" defendants. In addition, he asserts that his confinement as a "released" defendant in the Volunteers of America community treatment center constituted "official detention" because "sentenced" prisoners are deemed to be in "official detention" when BOP authorizes them to serve the last part of their sentences in a community treatment center, see U. S. Dept. of Justice, Bureau of Prisons Program Statement No. 7310.02 (Oct. 19, 1993) (interpreting 18 U. S. C. § 3624(c) to allow BOP to place sentenced prisoners in community corrections centers, since such centers meet 18 U. S. C. § 3621(b)'s definition of a "penal or correctional facility"), or to serve their sentences on educational or work release, see 18 U. S. C. §§ 3622(b) and (c).

It is quite true that under the Government's theory a defendant "released" to a community treatment center could be subject to restraints which do not materially differ from those imposed on a "detained" defendant committed to the

custody of the Attorney General, and thence assigned to a treatment center. But this fact does not undercut the remaining distinction that exists between *all* defendants committed to the custody of the Attorney General on the one hand, and *all* defendants released on bail on the other. Unlike defendants "released" on bail, defendants who are "detained" or "sentenced" *always remain subject to the control of the Bureau.* See *Randall* v. *Whelan,* 938 F. 2d 522, 525 (CA4 1991). This is an important distinction, as the identity of the custodian has both legal and practical significance. A defendant who is "released" is not in BOP's custody, and he cannot be summarily reassigned to a different place of confinement unless a judicial officer revokes his release, see 18 U. S. C. § 3148(b), or modifies the conditions of his release, see § 3142(c)(3). A defendant who is "detained," however, is completely subject to BOP's control. And "[t]hat single factor encompasses a wide variety of restrictions." *Randall, supra,* at 525. "Detained" defendants are subject to BOP's disciplinary procedures; they are subject to summary reassignment to any other penal or correctional facility within the system, cf. *Meachum* v. *Fano,* 427 U. S. 215, 224–229 (1976); and, being in the legal custody of BOP, the Bureau has full discretion to control many conditions of their confinement. See *Moody* v. *Daggett,* 429 U. S. 78, 88, n. 9 (1976); *Bell* v. *Wolfish,* 441 U. S. 520, 544–548 (1979).[5]

---

[5] In some cases, a defendant will be arrested, denied bail, and held in custody pursuant to state law, being turned over later to the Federal Government for prosecution. In these situations, BOP often grants credit under § 3585(b) for time spent in *state* custody, see, *e. g.,* U. S. Dept. of Justice, Federal Bureau of Prisons, Operations Memorandum (Oct. 23, 1989); U. S. Dept. of Justice, Federal Bureau of Prisons, Sentence Computation Manual CCCA (1992 and Supp. 1994), even though the defendant was *not* subject to the control of BOP. These situations obviously are not governed by reference to a § 3142 "release" or "detention" order. But because the only question before us is whether a defendant is in "official detention" under § 3585(b) during the time he is "released" on bail *pursu-*

It may seem unwise policy to treat defendants differently for purposes of sentence credit under § 3585(b) when they are similarly situated in fact—the one is confined to a community treatment center after having been "detained" and committed to the Bureau's custody, while the other is "released" to such a center on bail. But the alternative construction adopted by the Court of Appeals in this case has its own grave difficulties. To determine in each case whether a defendant "released" on bail was subjected to "jail-type confinement" would require a fact-intensive inquiry into the circumstances of confinement, an inquiry based on information in the hands of private entities not available to the Bureau as a matter of right. Even were such information more readily available, it seems certain that the phrase "jail-type confinement" would remain sufficiently vague and amorphous so that much the same kind of disparity in treatment for similarly situated defendants would arise. The Government's construction of § 3585(b), on the other hand, provides both it and the defendant with clear notice of the consequences of a § 3142 "release" or "detention" order.

Respondent finally suggests that the rule of lenity requires adoption of the "jail-type confinement" test for purposes of calculating credit under § 3585(b) because "there is a split of authority in the Circuits concerning the reach of 'official detention,'" Brief for Respondent 34, n. 13, and because there is ambiguity as to which forms of custody fall within the meaning of "'official detention.'" See *id.*, at 34. Respondent misconstrues the doctrine. A statute is not "'am-

*ant to the Bail Reform Act of 1984,* we need not and do not rule here on the propriety of BOP's decision to grant credit under § 3585(b) to a defendant who is denied bail *pursuant to state law* and held in the custody of state authorities. Thus, the dissent is simply wrong when it states that we have "adopt[ed] an interpretation that the Bureau of Prisons itself has rejected" by not allowing any "'credit for time spent in state custody.'" *Post,* at 67, 68.

biguous' for purposes of lenity merely because" there is "a division of judicial authority" over its proper construction. *Moskal* v. *United States*, 498 U. S. 103, 108 (1990). The rule of lenity applies only if, "after seizing everything from which aid can be derived," *Smith* v. *United States*, 508 U. S. 223, 239 (1993) (internal quotation marks and brackets omitted), we can make "no more than a guess as to what Congress intended." *Ladner* v. *United States*, 358 U. S. 169, 178 (1958). That is not this case.

We hold that the time respondent spent at the Volunteers of America community treatment center while "released" on bail pursuant to the Bail Reform Act of 1984 was not "official detention" within the meaning of 18 U. S. C. § 3585(b). Respondent therefore was not entitled to a credit against his sentence of imprisonment. The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE GINSBURG, concurring.

As the Government reads 18 U. S. C. § 3585(b), Koray gains credit against his sentence for the two months he spent in jail, but not for the five months' close confinement he encountered at the halfway house. The Court cogently explains why it adopts the Government's interpretation. I write separately to point out that Koray has not argued before us that he did not elect bail intelligently, *i. e.*, with comprehension that time in the halfway house, unlike time in jail, would yield no credit against his eventual sentence. The Court thus does not foreclose the possibility that the fundamental fairness we describe as "due process" calls for notice and a comprehension check. Cf. Fed. Rule Crim. Proc. 11 (setting out information a court is to convey to assure that a defendant who pleads guilty understands the consequences of the plea).

66

JUSTICE STEVENS, dissenting.

Pursuant to an order entered by a federal judicial officer, respondent was "confined to premises of [Volunteers of America (VOA)]," a private halfway house. The order of confinement—euphemistically styled a "release" order—provided that respondent "shall not be authorized to leave for any reason unless accompanied by Special Agent Dennis Bass." Brief for Respondent 3. While at VOA, respondent "had to account for his presence five times a day, he was subject to random breath and urine tests, his access to visitors was limited in both time and manner, and there was a paucity of vocational, educational, and recreational services compared to a prison facility." *Koray* v. *Sizer*, 21 F. 3d 558, 566 (CA3 1994). Except for one off-site medical exam, respondent remained at VOA 24 hours a day for 150 days. In my opinion, respondent's confinement was unquestionably both "official" and "detention" within the meaning of 18 U. S. C. § 3585(b).

Both the text and the purpose of § 3585(b) clearly contemplate that a person who is locked up for 24 hours a day, seven days a week, pursuant to a court order, is in "official detention." Such a person is surely in custody, and that custody is no less "official" for being ordered by a court rather than the Attorney General. Indeed, even the majority acknowledges the force of this plain meaning argument. *Ante*, at 61–62.* Moreover, the manifest purpose of § 3585(b) is to give a convicted person credit for all time spent in official

---

*See also *Koray* v. *Sizer*, 21 F. 3d 558, 565 (CA3 1994) (" 'To a normal English speaker, even to a legal English speaker, being forced to live in a halfway house is to be held "in custody" ' "); *Mills* v. *Taylor*, 967 F. 2d 1397, 1401 (CA9 1992) ("[C]onfinement to a treatment center 'falls convincingly within both the plain meaning and the obvious intent' of 'official detention' "); *Moreland* v. *United States*, 968 F. 2d 655, 664 (CA8 1992) (Heaney, J., joined by Lay, C. J., and McMillian, R. Arnold, and Gibson, JJ., dissenting) ("ordinary definition of detention is a 'period of temporary custody prior to disposition by a court' ").

custody as a result of the offense that gave rise to his conviction. When that confinement is in a facility that has all the restraints of a typical prison, it should not matter whether that facility is operated by a State, a county, or a private custodian pursuant to a contract with the Government.

Purporting to establish the contrary conclusion, the Court labors to prove the rather obvious proposition that all persons in the custody of the Attorney General pursuant to a detention order issued under 18 U. S. C. § 3142 (1988 ed. and Supp. V), as well as all persons confined in an "official detention facility" under § 3585(a), are also in "official detention" within the meaning of § 3585(b). However, proof that confinement under § 3142 or § 3585(a) constitutes official detention certainly is not proof that no other form of confinement can constitute official detention. The majority thus fails to demonstrate that respondent should not receive sentencing credit for his court-ordered full-time confinement in a jail-type facility.

Moreover, the Court's restrictive interpretation creates an anomalous result. Under the Court's view that only a person "committed to the custody of the Attorney General" can be in "official detention," § 3585(b) does not authorize any credit for time spent in state custody, "no matter how restrictive the conditions." *Ante,* at 60, 63–64, n. 5. This conclusion is so plainly at war with common sense that even the Attorney General rejects it. See Brief for Petitioners 11 ("[T]he Bureau grants credit for time spent in state custody"); see also Reply Brief for Petitioners 7–8.

The majority attempts to escape its self-created anomaly by suggesting that it "need not and do[es] not rule" on the propriety of giving credit for confinement under state law. *Ante,* at 64, n. 5. But that contention simply collapses the majority's house of cards. For either the "text" of the Bail Reform Act limits "official detention" to custody of the Attorney General, in which case the majority adopts an interpretation that even the Attorney General rejects, or the

"text" does not limit the meaning of official detention, and then there is absolutely no reason for concluding that court-ordered 24-hour-a-day confinement is not official detention. The majority cannot have it both ways.

Given the anomalous implications of the Court's decision, one may fairly question how the majority justifies its result. It is surely not the plain language of the statute, because the majority's reading requires that a judicially mandated, 24-hour-a-day confinement in a jail-type facility is neither "official" (because it is ordered by a judge and not the Attorney General) nor "detention" (because the judicial order is labeled "release"). Nor does the majority rely on the nature of the facility itself, because the majority concedes that if the Attorney General rather than the court had confined respondent in the exact same facility, respondent's confinement would have been "official detention" under the statute. The majority purports to rely on some sort of *Chevron* deference, *ante,* at 61, but it is indeed an odd sort of deference given that (as I have noted above) the majority adopts an interpretation that the Bureau of Prisons itself has rejected.

The majority suggests at one point that it relies on the history of the interpretation of the word "custody," arguing that Congress did not intend to change the settled meaning of "custody" that existed prior to the Bail Reform Act. However, not one of the cases cited by the majority, *ante,* at 59, stands for the proposition that custody does not include confinement in a jail-type facility. Instead, all of those cases involved situations in which the defendant was *at large.* See *Polakoff* v. *United States,* 489 F. 2d 727, 730 (CA5 1974) (defendant faced "travel and social restrictions and was required to report weekly to a probation officer"); *United States* v. *Robles,* 563 F. 2d 1308, 1309 (CA9 1977) (defendant required to "obey all laws, remain within the jurisdiction unless court permission was granted to travel, obey all court orders, and keep his attorney posted as to his address and employment"); *Ortega* v. *United States,* 510 F. 2d 412, 413

(CA10 1975) ("released on personal recognizance"); *United States* v. *Peterson,* 507 F. 2d 1191, 1192 (CADC 1974) (defendant "at large on conditional release"). Moreover, at least one Court of Appeals (albeit after the passage of the Bail Reform Act) interpreted the word "custody" under § 3568 as including "enforced residence under conditions approaching those of incarceration." *Brown* v. *Rison,* 895 F. 2d 533, 536 (CA9 1990). Thus, though I agree with the majority that Congress intended to incorporate the understanding of "custody" that existed under § 3568, I fail to see how that intention supports the majority's result.

Simply accepting the plain meaning of the statutory text would avoid the anomalies created by the Court's opinion, would effectuate the intent of Congress, and would provide fair treatment for defendants who will otherwise spend more time in custody than Congress has deemed necessary or appropriate. For these reasons, I agree with the persuasive opinion of the Court of Appeals and would affirm its judgment.