# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

No. 99-40450

---

## KAREEM A. NAGIB,

Petitioner-Appellant,

VERSUS

## N.L. CONNER, EDWARD CROSLEY,
and
## UNITED STATES BUREAU OF PRISONS,

Respondents-Appellees.

---

Appeal from the United States District Court
for the Eastern District of Texas
(5:97-CV-252)

---

August 13, 1999

Before SMITH, WIENER, and
BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Kareem Nagib appeals the denial of his petition for writ of habeas corpus and declaratory judgment. Finding him entitled to some sentence credit for time spent in unofficial detention, we REVERSE and RENDER judgment granting a sentence credit of fifty-two days.

## I.

Police arrested Nagib in Wisconsin in September 1989 for conspiracy to possess with intent to distribute narcotics. He was detained in federal custody at the county jail.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

At a detention hearing in late September 1989, he requested release on bond to Forest Hospital, a private health-care facility, for treatment of drug addiction and depression. The magistrate judge requested that the federal probation office investigate whether the proposed facility was a proper and secure facility for Nagib pending trial, and on November 1, 1989, the magistrate judge ordered Nagib's release to Forest Hospital.

The order, entitled "Order: Conditional Release," states that Nagib "shall be released on his own recognizance subject to the following conditions," including that the U.S. Marshal must transport Nagib to Forest Hospital and retrieve him for court appearances. The order refers to Nagib's "'voluntary' admission" to Forest Hospital and states that he "is ordered to remain in the program of said Forrest [sic] Hospital until he is discharged or until the further order of this court" and that if he is discharged, "the U.S. Marshal is directed to be present . . . and to

deliver the body of defendant Nagib as directed by the court."

More than four months after he entered Forest Hospital, Nagib, on March 9, 1990, was convicted of conspiracy with intent to deliver narcotics, an offense with a statutory minimum term of incarceration. Nonetheless, on March 14, the district court granted Nagib's motion to continue his treatment at Forest Hospital pending sentencing.

More than five months later, on September 28, Nagib was sentenced to 235 months' imprisonment. Again, the court ordered that he be returned to Forest Hospital pending classification by the Bureau of Prisons. The court eventually ordered Nagib's release from Forest Hospital, and, on November 20, 1990, he was taken into federal custody and transported to the Federal Medical Center in Rochester, Minnesota. In all, he spent 368 days at Forest Hospital, almost eight months of which was after his conviction. He spent 52 days at Forest Hospital after he was sentenced.

At sentencing, the court told Nagib he would receive credit toward his sentence for the time he spent at Forest Hospital.[1] Indeed, he initially was credited with that time, but the government "recomputed" his sentence in July 1994, to remove the credit. He was resentenced in 1993 to 151 months' imprisonment under amendments to the Sentencing Guidelines, resulting in a release date of August 31, 2000. He contends that his sentence should be credited with the 368 days he spent at Forest Hospital and, accordingly, that he should be released on August 28, 1999.

Nagib filed this habeas petition under 28 U.S.C. § 2241, arguing that the denial of credit for the time he spent at Forest Hospital violates his due process rights and that the retroactive application of *Reno v. Koray*, 515 U.S. 50 (1995), violates the Constitution's prohibition of ex post facto laws.[2] The district court referred the case to a magistrate judge, who issued a report and recommendation on February 22, 1999. The district court adopted the magistrate judge's report and denied relief.

II.

Pursuant to 18 U.S.C. § 3585, which was enacted as part of the Sentencing Reform Act of 1984 and became effective in 1987, a defendant is awarded credit for any time spent in "official detention."[3] The Bureau of Prisons

---

[1] The following conversation occurred at the sentencing hearing:

MR. ZIEVERS [Nagib's counsel]: Your Honor, would there be—another bookkeeping matter, would there be any entitlement to sentence credit at this point?

THE COURT: That is automatically given, Mr. Zievers; so, yes, you will receive it with or without an order of the court.

MR. ZIEVERS: I'm—obviously if he was in Racine [jail], it wouldn't be a question; but I don't want any confusion. He was in detention housed at Forest Hospital.

THE COURT: We'll, if you want to send my clerk a letter Monday detailing the
(continued...)

(...continued)
language that you would like in the formal judgment and commitment order, I think it's appropriate since the defendant has been in effect in custody since his arrest.

MR. ZIEVERS: Thank you, Your Honor.

[2] Nagib does not appeal the dismissal of his claim regarding the ex post facto application of *Koray*, but he does argue that the fact that the decision came after his bail hearings supports his contention that his right to due process has been infringed.

[3] Before 1987, a defendant was entitled to "credit toward service of his sentence for any days spent *in custody* in connection with the offense or acts for which the sentence was imposed." 18 U.S.C. § 3568 (1982) (repealed in 1984)
(continued...)

issued a program statement in 1992 providing that

> [t]ime spent in a community corrections center . . . . is not creditable as presentence time. A condition of bail or bond which is 'highly restrictive,' and that includes 'house arrest,' 'electronic monitoring,' or 'home confinement' . . . is not considered as time in official detention.

Bureau of Prisons Program Statement 5880.28(c) (internal policy statement).

In *Koray*, 515 U.S. at 64, the Court approved the Bureau of Prisons's conclusion that time spent by a defendant at a community treatment center while "released" on bail is not "official detention" under 18 U.S.C. § 3585. *Koray* thus forecloses any argument that Nagib's time at Forest Hospital comprised "official detention" under 18 U.S.C. § 3585.[4]

---

(...continued)
(emphasis added).

[4] In *Koray*, the Court considered a defendant who was released to a Volunteers of America community treatment center pending sentencing for money laundering, but whose "release order" required that he be "confined to the premises" and was without "authorization to leave for any reason" unless accompanied by a government agent. *See Koray*, 515 U.S. at 52-53. Deferring to the Bureau of Prisons's interpretation of "official detention," the Court concluded that the defendant was not entitled to sentencing credit, because "[a] defendant who is 'released' is not in [the Bureau's] custody, and he cannot be summarily reassigned to a different place of confinement unless a judicial officer revokes his release." *Id.* at 63. The Court rejected the Third Circuit's construction of official detention as including such a release, stating that "[t]o determine in each case whether a defendant 'released' on bail was subjected to 'jail-type confinement' would require a fact-intensive inquiry into the circumstances of confinement, an inquiry based on information in the hands of private entities not available to the Bureau as a matter of right," but that "[t]he Government's construction of § 3585(b), on the other hand, provides both it and the defendant with clear notice of the consequences of a § 3142 'release' or 'detention'
(continued...)

Precluded from directly attacking the government's refusal to credit his sentence, Nagib argues that he was either misinformed or uninformed regarding the consequences of his bail election and that this lack of information violated his due process rights. He bases his argument on Justice Ginsburg's concurring opinion in *Koray*, in which she explained:

---

(...continued)
order." *Id.* at 64.

3

I write separately to point out that Koray has not argued before us that he did not elect bail intelligently, i.e., with comprehension that time in the halfway house, unlike time in jail, would yield no credit against his eventual sentence. The Court thus does not foreclose the possibility that the fundamental fairness we describe as due "due process" calls for notice and a comprehension check. *Cf.* Fed. Rule Crim. Proc. 11 (setting out information a court is to convey to assure that a defendant who pleads guilty understands the consequences of the plea).

*Koray*, 515 U.S. at 65 (Ginsburg, J., concurring).

Nagib argued to the district court, and asserts again on appeal, that at the time of his bail hearings he could not have known of the Bureau of Prisons's policy articulated in 1992 and the *Koray* decision in 1995, and that the court's statement at the sentencing hearing regarding sentencing credit led him to believe he would receive credit for the time he spent at Forest Hospital. He contends that he has a due process right to clear notice of the consequences of electing a 'release' or 'detention' order and that that right was violated when the district court failed to inform him, when he initially sought release to the confined conditions of Forest Hospital, that he would receive no sentence credit for his time at the hospital.

### III.
#### A.
In rejecting Nagib's argument, the district court relied on *Cucciniello v. Keller*, 137 F.3d 721 (2d Cir. 1998). The defendant in that case had been released on bail, while he was a pretrial detainee, subject to a special condition of home confinement. The court said nothing at the bail hearing to indicate whether the period of home confinement (both before and after conviction) would be credited against any subsequent sentence. *See id.* at 722. The government later refused to credit the sentence, and the defendant sought habeas relief, arguing that his due process rights had

been infringed because he was not informed at the bail hearing that he would not receive credit toward any future sentence. The defendant specifically invoked Justice Ginsburg's concurring opinion in *Koray*. *See id.* at 724.

Affirming the dismissal of the petition, the court stated:

> We have respectfully considered the force of the possibility raised by Justice Ginsburg that due process might require notice to a pretrial detainee that release conditioned on home confinement will not be credited against a subsequent sentence and conclude that no such constitutional requirement exists . . . . There is no relinquishment of any significant right when a defendant elects bail. The defendant accepting the conditions of bail is simply trading jail-type confinement for something less restrictive. Though [the defendant] accepted home detention, this degree of confinement was not imposed as a surrender of prior liberty; it was an upgrade to less restrictive confinement.

*Id.* The court determined that any opportunity the defendant may have to shorten a later-imposed sentence "is too insubstantial to be regarded as a liberty interest protected by the Due Process Clause" because, at the time the defendant elects conditional bail, "it is entirely speculative whether he will be convicted, and, if so, whether he will be sentenced to prison." *Id.*

We find *Cucciniello*'s reasoning persuasive, and we agree that any liberty interest a pretrial detainee has in getting an early start on a possible future sentence is too insubstantial to merit protection under the Due Process Clause. Accordingly, Nagib was not denied due process when the district court failed to inform him, at his bail hearing, that elective confinement at Forest Hospital would not be credited toward any subsequently imposed sentence. He is therefore not entitled to

4

sentence credit for the time spent at Forest Hospital prior to his conviction.

## B.

After a defendant is convicted of a crime for which there is a mandatory minimum sentence, a future sentence is no longer "entirely speculative," and *Cucciniello*'s reasoning no longer applies. We must thus determine whether Nagib had a due process right to be informed, at the time of conviction, that his post-conviction tenure at Forest Hospital would not count toward his sentence. We conclude that he did not have such a constitutional right.

To determine what procedures are required by due process, we balance private versus government interests. *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Nagib contends that due process requires that a defendant be informed, when convicted, of the consequences of electing particular confinement options. The interests at stake are the defendant's interest in intelligently electing or declining to elect bail and the court's interest in avoiding the requirement to spell out for defendants all the implications of their bail election decisions.

Given the heavy burden such a requirement would place on courts, which already must provide a host of technical protections, and the fact that defendants could easily ask the court about sentencing credit (as Nagib finally did at his sentencing hearing), we do not believe the Due Process Clause places an affirmative duty on courts to inform convicts of the sentencing implications of their decisions regarding bail. Accordingly, the court did not violate Nagib's due process rights in failing to inform him, when he was convicted, that any additional time at Forest Hospital would not count toward his sentence. He is thus not entitled to credit for all the time he spent at Forest Hospital after his conviction.

## C.

But Nagib does not claim merely that the court violated his due process rights in failing to inform him that he would not receive sentence credit for his time at Forest Hospital;

he also notes that the court *affirmatively misinformed* him at his sentencing hearing that he would receive such credit. He claims that the court's misrepresentation violated his right to due process and that he should thus get sentence credit for his time at Forest Hospital.

We agree that the Due Process Clause guarantees a defendant's right not to be affirmatively misinformed of the sentencing implications of his decision to elect unofficial detention. "Litigants need to be able to trust the oral pronouncements of district court judges," *United States v. Buchanan*, 59 F.3d 914, 918 (9th Cir. 1995),[5] and requiring district courts to refrain from providing *mis*information, unlike affirmatively requiring them to provide information, does not impose a significant burden. Accordingly, Nagib's due process rights were violated when the court misinformed him that he would receive sentence credit, and he is therefore entitled to some relief.

Nagib asserts that he should get credit for his entire tenure (368 days) at Forest Hospital. The sentencing court's misrepresentation concerning credit did not occur, however, until near the end of Nagib's stay at the hospital. He thus did not rely on this misstatement in

---

[5] In *Buchanan*, a defendant entered into a plea agreement in which he waived the right to appeal sentencing findings, yet when he appeared in court to enter the plea, the court stated twice that he did have a right to appeal the findings. 59 F.3d at 916-17. The government did not object to those statements when they were made. The Ninth Circuit held the plea waiver unenforceable because the district court's clear statements trumped the waiver language in the written agreement in light of the government's failure to object, and because "[l]itigants need to be able to trust the oral pronouncements of district court judges." *Id.* at 918. In the case at hand, the government did not object to the sentencing court's assertion that Nagib would receive sentence credit for his time at Forest Hospital. *See also United States v. Amaya*, 111 F.3d 386, 387 (5th Cir. 1997) (vacating guilty plea entered in reliance on false promise that court had authority *sua sponte* to depart downward for substantial assistance).

electing bail, and he is not entitled to credit for days spent in Forest Hospital before the misrepresentation. Instead, he is entitled to credit for the fifty-two days he spent in Forest Hospital after the court told him he would receive sentence credit.

Nagib elected to return to Forest Hospital while he waited for the Bureau of Prisons to take him into custody, and his decision to do so was surely influenced by the misrepresentation regarding sentence credit. Fundamental fairness thus dictates that he receive credit for the fifty-two days he spent at Forest Hospital after his sentencing hearing. We therefore REVERSE the judgment that Nagib is entitled to no credit for his time at Forest Hospital and RENDER a judgment granting him fifty-two days of sentence credit.