Timothy FREEMAN, Petitioner

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 11, 2008.

Decided Sept. 24, 2008.

Harry J. Cancelmi, Jr., Public Defender, Waynesburg, for petitioner.

Arthur R. Thomas, Asst. Counsel and Victoria S. Madden, Chief Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SIMPSON.

Timothy Freeman petitions for review of an order of the Pennsylvania Board of Probation and Parole (Board) that recalculated his maximum sentence date. Freeman asserts the Board failed to properly credit his original state sentence with the time he served from the date of his arrest on a new federal charge until the time of sentencing on that charge. Because we rejected a similar assertion in our recent decision in *Bowman v. Pennsylvania Board of Probation & Parole*, 930 A.2d 599 (Pa.Cmwlth.2007), *appeal denied*, 596 Pa. 735, 945 A.2d 172 (2008), we affirm.

In 1998, the Montgomery County Court of Common Pleas sentenced Freeman to five to ten years in a state correctional institution for robbery. At that time, Freeman's maximum sentence date was August 26, 2007.

In 2003, the Board paroled Freeman to a community corrections center. Shortly thereafter, the Board declared Freeman delinquent on parole after he failed to return to the center.

On July 8, 2004, Norristown Police arrested Freeman based on knowledge that Freeman "was wanted for parole violations." Certified Record (C.R.) at 11. During the arrest, police seized weapons and drugs from Freeman, resulting in new state charges. The next day, the Board issued a warrant to detain Freeman. After hearing, the Board recommitted Freeman to serve 12 months' backtime as a technical parole violator.

The prosecution of Freeman's new state charges was subsequently withdrawn by county authorities to facilitate a federal prosecution on the underlying weapons charge. On December 21, 2004, federal authorities indicted Freeman on firearms charges, and a federal magistrate issued a bench warrant for Freeman's arrest. Freeman stipulated to pre-trial detention and was ordered detained pending further proceedings.

In August 2005, Freeman pled guilty to a federal firearms charge. In February 2006, a federal court sentenced Freeman to serve a new term of imprisonment of 36 months in the custody of the United States Bureau of Prisons (BOP). Approximately a year later, federal authorities released Freeman from his 36–month sentence and returned him to Montgomery County Prison, where he remained until August 22, 2006.

Thereafter, from August 22, 2006 until February 16, 2007, Freeman was housed at a federal corrections facility. Freeman subsequently mailed a "Request for Administrative Relief" to the Board, asserting, among other things, he remained in state custody for more than six-and-a-half months before being taken into federal custody.

In February 2007, Freeman returned to a state correctional institution, and the Board issued a warrant to commit and detain Freeman.

A few months later, as a result of his federal conviction, the Board recommitted Freeman to serve 18 months' backtime as a convicted parole violator. The Board also recalculated Freeman's maximum sentence date as April 21, 2011. The recalculation order did not credit Freeman's origi-

nal state sentence with the 408 days from December 21, 2004 to February 2, 2006, during which he was confined on the new federal charges and did not post bail. In addition, the Board order did not credit Freeman's original state sentence with the 165 days he was confined in county jail on the new state charges from July 9, 2004 to December 21, 2004, while a Board warrant was also pending. Freeman subsequently filed a petition for administrative review of the recalculation order, which the Board denied.

Thereafter, the Board issued a second recalculation order in which it recalculated Freeman's maximum sentence date as November 7, 2010, crediting that sentence with the 165 days he was confined from July 9, 2004 to December 21, 2004 (confined in county jail on new state charges, subsequently withdrawn, while Board warrant pending, before new federal charges). Again, Freeman filed a petition for administrative review of the recalculation order, which the Board denied. This appeal followed.[1]

On appeal,[2] Freeman argues the Board failed to properly credit his original state sentence for the period beginning July 8, 2004, the date of his arrest on new state charges, until February 2, 2006, the date of his federal sentencing.

The Board responds that Freeman did not post bail on his new federal charge from December 21, 2004, the date a bench warrant was issued for his arrest on the federal indictment, until February 2, 2006, when he was sentenced on the federal charge. The Board maintains Freeman

received credit for this period toward his new federal sentence, and, therefore, he is not entitled to credit on his original state sentence for this period or else he would receive "double credit" for this period.

In denying Freeman's petition for administrative relief, the Board explained its calculation of Freeman's new maximum sentence date as follows:

When [Freeman] was paroled on June 23, 2003 his max date was August 26, 2007, which left 1525 days remaining on his sentence in light of his recommitment as a convicted parole violator. *However, he received 165 days of credit on his original sentence for the period he was incarcerated solely on the Board's warrant from July 9, 2004 to December 21, 2004.* Subtracting this credit from the time he had remaining results in a total of 1360 days remaining on [Freeman's] sentence. [Freeman] became available to begin serving his original sentence again on February 16, 2007, when he was released from his new federal sentence. Adding 1360 days to that date yields a new parole violation maximum date of November 7, 2010.

C.R. at 91 (emphasis added). We discern no error in the Board's determination that it correctly calculated Freeman's new maximum sentence date.

More specifically, as is clear from the above determination, the Board did, in fact, credit Freeman's original state sentence for the period he served from July 9, 2004[3] through December 21, 2004, the

---

1. Freeman filed separate petitions for review from the two Board orders that denied his requests for administrative relief, which were docketed at 110 C.D. 2008 and 228 C.D. 2008. This Court then consolidated the petitions for review in February 2008.

2. We are limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were made, and whether constitutional rights were violated. *Prebella v. Pa. Bd. of Prob. & Parole,* 942 A.2d 257 (Pa.Cmwlth.2008).

3. Freeman asserts the Board erred in failing

time he spent incarcerated solely on the Board's warrant. Certified Record (C.R.) at 91. Therefore, Freeman's continued assertion that the Board erred in failing to afford him credit for this period lacks merit.

As to the period from December 21, 2004, the date of Freeman's arrest on new federal charges, until February 2, 2006, the date of his sentencing on the federal charge, we agree with the Board that Freeman is not entitled to credit for the period on his original state sentence.

We addressed the issue raised by Freeman in our recent opinion in *Bowman.* There, while on parole by the Board, the parolee was arrested on a state firearms charge. The state charges were withdrawn in order to facilitate a federal prosecution, and on the same day, the parolee was moved to a federal detention center where he was arrested on a new federal firearms charge. He did not post bail, and he was immediately returned to a state correctional institution. Thereafter, the parolee pled guilty to federal firearms charge, and he was sentenced later to federal prison. Upon his release and his return to state prison, the Board issued a recalculation order. The Board order did not credit the parolee's original state sentence with the time during which he was confined on a new federal charge on which he had not posted bail.

On appeal to this Court, the parolee asserted the Board erred in failing to credit this time toward his original state sentence. After a thorough review of relevant case law beginning with our Supreme Court's seminal decision in *Gaito v. Pennsylvania Board of Probation & Parole,* 488 Pa. 397, 412 A.2d 568 (1980), and including more recent decisions in *McCray v. Penn-*

*sylvania Department of Corrections,* 582 Pa. 440, 872 A.2d 1127 (2005), *Armbruster v. Pennsylvania Board of Probation & Parole,* 919 A.2d 348 (Pa.Cmwlth.2007), *Melhorn v. Pennsylvania Board of Probation & Parole,* 883 A.2d 1123 (Pa.Cmwlth. 2005), *rev'd per curiam,* 589 Pa. 250, 908 A.2d 266 (2006), we rejected this assertion. More specifically, we explained:

Unlike Pennsylvania Courts of Common Pleas, United States District Courts do not have the power to calculate credit for time spent in custody. Instead, it appears that it is the Attorney General, through the BOP, that possesses the sole authority to make credit determinations pursuant to 18 U.S.C.S. § 3585(b). *See United States v. Whaley,* 148 F.3d 205 (2nd Cir.1998) (citing *United States v, Wilson,* 503 U.S. 329, 333, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992)) (noting that although prisoners may seek judicial review of the BOP's sentencing determinations after exhausting their administrative remedies, the district court is without jurisdiction to compute sentencing credit if a prisoner does not challenge his sentence and has not sought administrative review); *see also United States v. Pardue,* 363 F.3d 695 (8th Cir.2004) (acknowledging that administrative procedures exist with the BOP to review the BOP's failure to credit time the appellant has served and that, once administrative remedies are exhausted, prisoners may then seek judicial review of any jail-time credit determination by filing a habeas petition under 28 U.S.C.S. § 2241).

Based on our review of the record, there is no indication that [the parolee] sought sentencing credit on his new fed-

to credit his sentence beginning July 8, 2004 rather than on July 9, 2004. However, he did not raise this issue before the Board; there-

fore, it is waived. *Reavis v. Pa. Bd. of Prob. & Parole,* 909 A.2d 28 (Pa.Cmwlth.2006).

eral sentence through the proper administrative channels. Consequently, this case is similar to *Armbruster, Melhorn* and *McCray* in that [the parolee] was not given credit on his new sentence for the time spent in custody but now seeks to have it applied to his original sentence. As in *Armbruster the remedy is not through the Board but was, instead, through the entity with the power to make credit determinations, in this case the BOP. Simply put, [the parolee's] oversight in failing to seek credit on his new federal sentence for his time in custody cannot and should not be rewarded. Accordingly, we conclude that [the parolee's] argument is without merit.*

*Bowman*, 930 A.2d at 605 (emphasis added).

Similar to the parolee in *Bowman*, here Freeman was housed in a county correctional facility after his arrest on new federal charges until his sentencing on those charges. Pursuant to *Bowman*, Freeman is not entitled to credit for this period toward his original state sentence; rather, he was required to seek credit for the period through the BOP, the appropriate federal administrative channel. As in *Bowman*, there is no indication that Freeman sought this credit on his federal sentence. Therefore, like the parolee in *Bowman*, Freeman's remedy is not through the Board; his assertions to the contrary lack merit.

Without acknowledging our recent decision in *Bowman*, Freeman cites *Reno v. Koray*, 515 U.S. 50, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995), for the proposition that a defendant is not in "official detention" so as to apply pre-sentence credit to his new federal sentence unless he is detained in a correctional facility and subject to the control of BOP. We rejected this precise argument in *Bowman*, explaining:

[The parolee] reasons that, because he was not subject to the control of the BOP from September 23, 1991, through March 2, 1992, that time could not be credited to his federal sentence and, should, therefore, be applied to his original sentence.

Contrary to [the parolee's] assertions, we do not believe that *Reno* stands for the proposition that an inmate must be subject to the control of the BOP in order to be "in official detention" and therefore entitled to credit for prior custody on his new sentence pursuant 18 U.S.C.S. § 3585. Indeed, it is clear that [the] United States Supreme Court granted certiorari in *Reno* "to resolve a conflict among the Courts of Appeals on the question whether a federal prisoner is entitled to credit against his sentence under § 3585(b) for time when he was 'released' on bail pursuant to the Bail Reform Act of 1984." *Reno*, 515 U.S. at 54, 115 S.Ct. 2021, 132 L.Ed.2d 46. This is simply not the case here. In fact, the Supreme Court's opinion actually acknowledges that the BOP has the power to grant credit under Section 3585(b) for time spent in state custody. In this regard, the Court stated:

In some cases, a defendant will be arrested, denied bail, and held in custody pursuant to state law, being turned over later to the Federal Government for prosecution. In these situations, BOP often grants credit under § 3585(b) for time spent in state custody, ... even though the defendant was not subject to the control of BOP.

*Reno*, 515 U.S. at 63, n. 5, 115 S.Ct. 2021, 132 L.Ed.2d 46 (emphasis in original). *See also United States of America v. Dowling*, 962 F.2d 390 (5th Cir.1992).

*Bowman*, 930 A.2d at 604–05 (footnote omitted). Based on our holding in *Bow-*

*man,* we reject Freeman's argument to the contrary.

The only difference between this case and *Bowman* is the period following withdrawal of the new state charges. In *Bowman,* the parolee was arrested on the new federal charges the same day the new state charges were withdrawn. Here, 165 days passed between withdrawal of the new state charges and Freeman's arrest on the new federal charges. Freeman was given credit for the 165 days, as discussed above. Regarding credit for the period of confinement starting with the new federal charges, this case is identical to *Bowman,* which is why that decision controls.

For all the foregoing reasons, we affirm.

### *O R D E R*

AND NOW, this 24th day of September, 2008, the order of the Pennsylvania Board of Probation and Parole is **AFFIRMED.**