# United States Court of Appeals
## For the First Circuit

No. 03-1104

UNITED STATES,

Appellant,

v.

JORGE CINTRÓN-FERNÁNDEZ, a/k/a JORGE CINTRÓN, JR.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Howard, Circuit Judge,
Campbell and Stahl, Senior Circuit Judges.

Ara B. Gershengorn, United States Department of Justice, with whom H.S. Garcia, United States Attorney, Robert D. McCallum, Assistant Attorney General, Kathleen A. Kane and Michael S. Raab, Civil Division, United States Department of Justice, were on brief for appellant.
Luis F. Camacho for appellee.

February 3, 2004

**CAMPBELL**, **Senior Circuit Judge**.   Defendant-Appellee, Jorge Cintron-Fernandez, was convicted in the United States District Court for the District of Puerto Rico on his plea of guilty to charges relating to the adulteration and misbranding of frozen food products.  After determining the amount of consumer loss, the court ruled that Cintron-Fernandez had a total offense level of 12 and a criminal history category of I, which would require a minimum sentence of ten months imprisonment under the Sentencing Guidelines.  U.S.S.G. § 5A (Table).  The district court sentenced Cintron-Fernandez to five months imprisonment but substituted home confinement in lieu of incarceration for that term.  The court also imposed three years of supervised release, five months of which were to be served in accordance with the Home Confinement Program.  The government appeals, arguing that the district court imposed an illegal sentence. We vacate the sentence and remand for resentencing.

## I.  BACKGROUND

"Because this appeal involves sentencing issues following a guilty plea, we take the background facts from the presentence report."  United States v. Brady, 168 F.3d 574, 576 (1st Cir. 1999).

From August of 1991 until at least December of 1997, Jocel Manufacturing Corporation ("Jocel") manufactured and sold frozen desserts, including ones labeled "Caparra Ice Cream" and

"Rico," to restaurants and wholesale and retail customers in Puerto Rico. During most of that period, Cintron-Fernandez's father, Jorge Cintron-Renta, was the overall manager of Jocel, and Cintron-Fernandez was Jocel's production manager with responsibility for the production of food products.

In 1991 and 1992, the United States Food and Drug Administration ("the FDA") warned Cintron-Renta and Cintron-Fernandez of the requirement that food labeled as "ice cream" contain not less than ten percent milkfat. 21 C.F.R. § 135.110(a)(2). Notwithstanding this warning, Cintron-Renta and Cintron-Fernandez continued to produce and sell Caparra ice cream with less than ten percent milkfat, and they misled the FDA about the true content and labeling of the product. Thus, while Cintron-Renta promised the FDA that Jocel would revise its formula so that its ice cream would contain at least ten percent milkfat, he and Cintron-Fernandez instructed Jocel's employees to use a mixture of coconut oil and milkfat for the "Caparra Ice Cream" base that contained less than ten percent milkfat. They packed this product into containers with labels that failed to list coconut oil as an ingredient. Ultimately, Jocel sold "Caparra Ice Cream" to the public without notifying customers that it contained less than ten percent milkfat or that it contained coconut oil. This conduct occurred over a period of at least 21 months and is estimated to have resulted in a loss to consumers of at least $107,706.40.

On April 5, 2000, a federal grand jury indicted Cintron-Fernandez, Cintron-Renta, and Jocel Manufacturing Corporation, for conspiracy, adulteration of food, misbranding of food, and false, fictitious, and fraudulent claims against the United States. After discovery, Cintron-Fernandez entered into a plea agreement with the United States in which he agreed to plead guilty to Counts One and Six of the indictment and to adopt the government's version of the facts. Count One charged that he had unlawfully, knowingly, wilfully, and intentionally combined and confederated with others to cause, with the intent to defraud or mislead, food labeled as "ice cream" to be adulterated and misbranded while the food was held for sale, in violation of 21 U.S.C. § 331(k), and that he had knowingly executed a scheme to defraud and obtain money by means of materially false and fraudulent representations and promises through the United States Postal Service, in violation of 18 U.S.C. § 1341, and all in violation of 18 U.S.C. § 371. Count Six charged that he had, with the intent to defraud and mislead, misbranded "ice cream" while held for sale in interstate commerce, in violation of 21 U.S.C. §§ 331(k) and 333(a)(2).

In accordance with the agreement, Cintron-Fernandez entered a guilty plea. A presentence report was prepared and given to the parties, which calculated consumer loss to be $107,706.40. Cintron-Fernandez filed an objection to the amount of consumer loss. The district court referred the issue to Magistrate Judge

-4-

Gustavo A. Gelphi, who, after an evidentiary hearing, concluded that $107,706.40 was an appropriate figure.

On November 13, 2002, the district court held a sentencing hearing. As Cintron-Fernandez had violated two closely related counts, the district court grouped the two counts into a combined offense level. Applying the 1997 Sentencing Guidelines,[1] the court determined that the Count One offenses were governed by § 2X1.1, which applies to conspiracies not covered by a specific offense Guideline. Rather than providing its own offense level, § 2X1.1(a) states that courts should apply the base offense level from the Guideline for the substantive offense. Accordingly, the district court determined that both substantive offenses in Count One were governed by § 2F1.1.[2] The district court further determined that the Count Two sentences were also governed by § 2F1.1.[3]

---

[1] As both parties agree that the 1997 Sentencing Guidelines apply here, we apply the 1997 Sentencing Guidelines and, therefore, need not determine whether applying the Guidelines in effect when Cintron-Fernandez was sentenced would violate the Ex Post Facto Clause. U.S.S.G. § 1B1.11; United States v. Prezioso, 989 F.2d 52, 53-54 (1st Cir. 1993).

[2] Section 2F.1.1 applies to violations of 18 U.S.C. § 1341. Section 2N2.1 applies to violations of 21 U.S.C. 331(k), but § 2N2.1(b) requires courts to apply § 2F1.1 instead of § 2N2.1 if the offense involved fraud. Here, Cintron-Fernandez pled guilty to violating 18 U.S.C. § 331(k) "with intent to defraud or mislead," so § 2F1.1 applies.

[3] Section 2N2.1 applies to 21 U.S.C. §§ 331 and 333(a)(2), but, as mentioned, § 2N2.1(b) requires courts to apply § 2F1.1 to offenses involving fraud.

Based on § 2F1.1, the district court concluded that the base offense level was six. Since § 2F1.1 provides for increases in the offense level according to the amount of loss resulting from a crime if those losses are above $2,000, the district court, using the consumer loss figure of $107,706.40, increased Cintron-Fernandez's total offense level six levels. U.S.S.G. § 2F1.1b(1). Accordingly, it assessed Cintron-Fernandez's total guideline sentence at twelve.[4] The district court further determined that Cintron-Fernandez had a criminal history category of I.

Applying this offense level and criminal history to the sentencing table, the district court then determined that the applicable guideline imprisonment range was from ten to sixteen months (Zone C) with a fine range of $3,000 to $30,000 plus a term of supervised release of at least two but not more than three years. U.S.S.G. § 5A (Table). The district court imposed a fine of $3,000 for each of the two counts and stated that appellee was to be:

> committed to the custody of the Bureau of Prisons to be imprisoned for a term of five months and pursuant to guideline [5C1.1(d)(2)] the Court will substitute one day of home confinement for one day of incarceration and said term of imprisonment is to be served concurrently as to counts one and six. In other words, the Court, although it imposes a

---

[4] Thereafter, the district court added two levels for planning pursuant to § 2F1.1(b)(2)(A), but it later subtracted two levels for acceptance of responsibility pursuant to § 3E1.1. Accordingly, the total offense level remained at twelve.

-6-

term of imprisonment of five months, which is at the lower end of the guideline range of ten, pursuant to guideline [5C1.1(e)(3)] substitutes one day of home detention for one day of imprisonment. Upon completion of said term of five months he shall be placed on supervisory release for a term of three years as to each count to be served concurrently under the following conditions . . . He shall be placed in home detention and comply with the conditions of the home confinement program for a period of five months.

When asked for clarification of the sentence by the government's counsel, the district court explained:

And that is a type of sentence that I impose when I am in Zone C at 12. You are correct . . . [5C1.1(d)(2)] provides that if the Court must sentence the defendants to imprisonment provided that at least one half of the minimum term is satisfied by imprisonment. I have imposed a term of imprisonment of five months as to each count concurrently then I move on to [5C1.1(e)(3)] which states that, that is the schedule of substitute punishment and I have substituted one day of home detention for one day of imprisonment so although he has been sentenced to a term of imprisonment as to each count, five months, it is half of the minimum of the guideline, nevertheless the Court substitutes one day of home confinement for one day of imprisonment.

The government objected, without avail, that the substitution provision of § 5C1.1(e) could not be used to override the Guidelines' minimum sentence requirements.

On November 20, 2002, the district court entered the announced sentence. The government filed a timely notice of appeal. Several months later, on April 13, 2003, under the

jurisdiction of the Probation Office of the United States District Court for the District of Puerto Rico, Cintron-Fernandez began serving the five months of home detention associated with his three-year term of supervised release, wearing an electronic monitoring device as required. On September 11, 2003, his home detention ended, the electronic monitoring device was removed, and Cintron-Fernandez proceeded with the balance of his three-year term of supervised release.

## II. ANALYSIS

### A. Jurisdiction

On appeal, the government argues that the district court, in imposing a total of ten months of home confinement in lieu of incarceration, failed to comply with the requirements of § 5C1.1 of the Sentencing Guidelines, which requires that at least one-half of the minimum term of imprisonment, here ten months, be satisfied by imprisonment rather than by home detention.[5]

---

[5] There is no dispute that the applicable sentencing range in this case was ten to sixteen months, that this sentence falls within Zone C of the Sentencing Guidelines, and that § 5C1.1 of the Sentencing Guidelines governs Cintron-Fernandez's sentence. As discussed more fully later, the government argues that the district court's sentence is illegal because it fails to satisfy the minimum term required by § 5C1.1, which, it contends, requires that at least half of a defendant's minimum term be satisfied by actual imprisonment rather than home detention. As the applicable minimum term is ten months, the government argues that Cintron-Fernandez's sentence must include at least five months of actual imprisonment. The district court's announced sentence here included two components: first, an "imprisonment" component of five months to be served under the aegis of the Bureau of Prisons which was, however, reduced to home confinement (still, it appears, under the

-8-

Cintron-Fernandez argues that we lack jurisdiction to consider the government's appeal because the district court -- rather than issuing a final order sentencing Cintron-Fernandez to home detention in lieu of imprisonment -- simply gave to the Bureau of Prisons a non-binding and non-reviewable "recommendation" that Cintron-Fernandez's ordered five months imprisonment be served at home. United States v. Melendez, 279 F.3d 16, 18 (1st Cir. 2002) (per curiam) (mere recommendation not reviewable order), cert. denied, 535 U.S. 1120 (2002). We see no merit to this argument, as we find the sentencing order to have been both final and reviewable.

It is clear from the wording of the judgment itself, as well as the judge's oral comments, that the judge intended Cintron-Fernandez's specified term of "imprisonment" to consist of five months of home confinement in lieu of incarceration. This substitution was not stated as a mere recommendation. Under the heading "IMPRISONMENT," the written judgment provides,

> The defendant is hereby committed to the custody of the United States Bureau of Prisons to be committed for a total term of five (5) months as to each count, to be served concurrently with each other, pursuant to U.S.S.G. § 5C1.1(d)(2) the defendant will be placed in home confinement in lieu of

Bureau to administer); and, second, an additional five months of home confinement as a condition of three years of supervisory release. The district court evidently believed these two periods of home confinement measured up to the minimum ten months Guidelines requirement.

> incarceration, one day of home confinement for one day of incarceration pursuant to U.S.S.G. § 5C1.1(e)(1)(3).

The language is mandatory -- "the defendant will be placed in home confinement in lieu of incarceration." Notably, the court did not utilize a space in the sentencing form earmarked for recommendations to the Bureau of Prisons. There was no check by the box provided for the court to indicate it was making a recommendation, nor was any purported recommendation written in the relevant space.

The above is consistent with the district court's oral directions during the sentencing hearing. In none of these did the court suggest that the Bureau of Prisons could incarcerate Cintron-Fernandez in one of its facilities in lieu of the directed home confinement.

As the judge's sentencing directions were unambiguous and unequivocal, the court's intentions were clear. See United States v. Flynn, 49 F.3d 11, 13 (1st Cir. 1995) ("'The intent of the sentencing court must guide any retrospective inquiry into the term and nature of a sentence.'") (quoting United States v. Einspahr, 35 F.3d 505, 506 (10th Cir.), cert. denied, 513 U.S. 1009 (1994)). Rather than a "recommendation," the district court imposed a sentence of five months home detention in lieu of imprisonment followed by three years of supervised release, five months of which were also to be served in home detention, together with an

-10-

assessment and fine.  Cf. United States v. Serafini, 233 F.3d 758, 778 (3d Cir. 2000) (concluding that order was non-reviewable recommendation which stated, "The Court recommends that the Bureau of Prisons designate the Catholic Social Services of Lackawanna County Residential Program, Scranton, Pennsylvania, as the place for service of this sentence,") (emphasis added).

Cintron-Fernandez argues that since the court placed him in the Bureau of Prisons' custody, any statement by the court as to his place of confinement could only be read as an implicit recommendation because the Bureau of Prisons alone has the power to designate the place of imprisonment.  See 18 U.S.C. § 3621(b) (stating, "The Bureau of Prisons shall designate the place of the prisoner's imprisonment.").  But the fact that the district court may have exceeded its own authority in ordering the Bureau to substitute home confinement does not turn the district court's order into a non-reviewable recommendation.  The Bureau of Prisons apparently did not take Cintron-Fernandez into its custody at all but rather elected to do nothing pending this appeal.  Two days after the sentence was entered, the Probation Office conducted an initial interview with Cintron-Fernandez.  It then waited for approximately five months, perhaps out of deference to the Bureau of Prisons should the Bureau have wished to take Cintron-Fernandez into its custody.  During this period, Cintron-Fernandez telephoned the Probation Office each month.  Finally, the Probation Office

-11-

installed, in April, a home monitoring unit in Cintron-Fernandez's home, monitored him for five months, and served as his primary contact throughout this period of home detention. This five-month term of home detention apparently fulfilled the second portion of the district court's order imposing home detention as a condition of supervised release. Cintron-Fernandez appears never to have served the earlier term of home detention assigned under the label of "IMPRISONMENT" to the jurisdiction of the Bureau of Prisons. See supra at p. 8, n.5. There is, moreover, no indication that the Bureau of Prisons ever undertook to make a choice of its own regarding the character of Cintron-Fernandez's confinement. According to 18 U.S.C. § 3621(b), the Bureau is supposed to choose a "penal or correctional facility" and determine that the facility meets enumerated minimum standards of health and habitability.[6] Rather Cintron-Fernandez was simply left to serve a single five-month term of home confinement as a condition of supervised release under the aegis of the Probation Office.

We conclude that while the district court's sentencing order was in fact erroneous as hereinafter explained, it was in no

_____

[6] For present purposes, we need not reach the issue of whether Cintron-Fernandez's home could ever qualify as a "penal or correctional facility" under 18 U.S.C. § 3621(b). We note that home detention is mentioned in § 5C1.1 of the Sentencing Guidelines as a possible condition of supervised release, and, to our knowledge, is nowhere statutorily described as a form of imprisonment entrusted to the Bureau of Prisons.

way a mere recommendation, and is both final and reviewable on appeal.

### B.  The Legality of the Sentence

The government argues that the district court's sentence is illegal because it fails to satisfy the minimum term required by § 5C1.1 of the Sentencing Guidelines.  We agree.  We review de novo the district court's legal interpretations of the Sentencing Guidelines.  United States v. Thiongo, 344 F.3d 55, 62 (1st Cir. 2003).

Section 5C1.1 states as follows:

(d) If the applicable guideline range is in Zone C of the Sentencing Table, the minimum term may be satisfied by --
(1) a sentence of imprisonment; or
(2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in subsection (e), provided that at least one-half of the minimum term is satisfied by imprisonment.

As Cintron-Fernandez's sentence is within Zone C, § 5C1.1(d) applies.  Accordingly, the minimum term of his sentence -- ten months -- can be satisfied in two ways.  First, a sentence of ten months imprisonment would satisfy the minimum term.  U.S.S.G. § 5C1.1(d)(1).   Secondly,  a  sentence  that  substitutes  for imprisonment home detention according to the substitution schedule of § 5C1.1(e), provided that at least one-half of the minimum term is satisfied by imprisonment, would satisfy the minimum term.

-13-

U.S.S.G. § 5C1.1(d)(2). Section 5C1.1(e) allows one day of home detention or community confinement to be credited for one day of imprisonment. Thus, if the court wished to impose the most lenient legal minimum sentence against Cintron-Fernandez, it could have sentenced him to five months imprisonment together with five months of home detention or community confinement. U.S.S.G. §§ 5C1.1(d)(2) & (e). Cintron-Fernandez's sentence must include at least five months of imprisonment in order to satisfy the minimum term.

Here the court stated that it committed Cintron-Fernandez "to the custody of the Bureau of Prisons to be imprisoned for a term of five months." But immediately thereafter the court substituted five months of home detention in lieu of incarceration. It then added three years of supervised release, five months of which would also be served in home detention. Such a sentence fails to meet the guideline requirement that "at least one half of the minimum term [here ten months] is satisfied by imprisonment." U.S.S.G. §§ 5C.1.1(d) & (e). Rather, it provides for ten months of home detention with no "imprisonment" at all.

Cintron-Fernandez argues that the Guideline requirement that at least half of the minimum term be "satisfied by imprisonment" allows the "imprisonment" portion making up the half term to itself be also home detention. Under this view,

-14-

"imprisonment" in § 5C1.1 can mean not only time served in prison but time served in home detention or community confinement.

Cintron-Fernandez's interpretation is without merit. It is clear from both the text and commentary of § 5C1.1 that, in the context of § 5C1.1,[7] the minimum half term of "imprisonment" cannot be satisfied by home detention or by community confinement. According to §§ 5C1.1(d) & (e), home detention and community confinement are considered as "Substitute Punishments" for imprisonment, not merely different forms of imprisonment itself. See also United States v. Delloiacono, 900 F.2d 481, 484 n.7 (1st Cir. 1991) (stating "Since November 1, 1989, 'home detention,' which also requires confinement, has been an authorized substitute for a term of imprisonment.").

Section 5C1.1's commentary states "at least one half of the minimum term specified in the guideline range must be satisfied by imprisonment, and the remainder of the minimum term specified in the guideline range must be satisfied by community confinement or home detention." This explanation would be meaningless if

---

[7] Our interpretation of imprisonment does not necessarily apply to provisions other than § 5C1.1. The commentary to § 1B1.1, which governs general application of the Guidelines, states, "Definitions of terms also may appear in other sections. Such definitions are not designed for general applicability; therefore, their applicability to sections other than those expressly referenced must be determined on a case by case basis." See also United States v. Rasco, 963 F.2d 132, 137 (6th Cir. 1992) (stating that the Guidelines caution against attempting to achieve definitional coherence across numerous provisions).

imprisonment meant the very same thing as home detention.  See United States v. Reccko, 151 F.3d 29, 32 (1st Cir. 1998) (stating Guideline commentary is binding unless it violates federal law, is inconsistent with Guidelines, or is based on plainly erroneous reading of Guideline provision).  That the two terms mean different things is also shown by the example given in the commentary "that satisfies the minimum term of imprisonment required by the guideline range."  U.S.S.G. § 5C1.1, comment. (n.4).  The example specifies that "where the guideline range is 8-14 months, a sentence of four months imprisonment followed by a term of supervised release with a condition requiring four months community confinement or home detention would satisfy the minimum term of imprisonment required by the guideline range."  Id.

Cintron-Fernandez's proposed interpretation is also at odds with the case law.  See, e.g., Serafini, 233 F.3d at 778 (stating community confinement cannot constitute imprisonment for purposes of fulfilling the requirement that one-half of a split sentence be satisfied by imprisonment under § 5C1.1); United States v. Adler, 52 F.3d 20, 21 (2d Cir. 1995) (stating, "We agree with the government that the district court's interpretation of Sections 5C2.1(d) and (e) is erroneous.  'Imprisonment' and 'community confinement' are not synonyms . . . Moreover, as the Seventh and Ninth Circuits have already concluded, Section 5C1.1(d), the almost identically-worded successor to Section 5C2.1(d), clearly makes a

distinction between imprisonment and community confinement.") (citations omitted); <u>United States</u> v. <u>Jalili</u>, 925 F.2d 889, 892 (6th Cir. 1991) (stating, "we read Guideline § 5C1.1 . . . to mean that community confinement may be included as a condition during the term of supervised release."). We decline, therefore, to adopt Cintron-Fernandez's interpretation of § 5C1.1.

It follows that the district court's sentence was erroneous insofar as it failed to require at least five months of imprisonment together with the five months of home detention that it imposed as a condition of the three year term of supervised release.

We **reverse** the judgment of the district court and **remand** the case for resentencing in accordance with the Sentencing Guidelines as herein interpreted and resolution of any related issues.