**UNITED STATES of America**

v.

**Henry ROME, Appellant.**

No. 09–3578.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) May 14, 2010.

Opinion Filed June 21, 2010.

George S. Leone, Esq., Office of United States Attorney, Newark, NJ, for United States of America.

Peter M. Carter, Esq., Office of Federal Public Defender, Newark, NJ, for Appellant.

Before: BARRY and ROTH, Circuit Judges, and DALZELL *, District Judge.

## OPINION

DALZELL, District Judge.

Appellant Henry Rome [1] appeals the district court's sanction for his violation of a condition of his supervised release. Rome argues that the district court committed procedural errors by sentencing him above the statutory maximum and failing to consider alternative types of sentences for his violation. He also contends that the sanction was overly punitive and unreasonable. For the following reasons, we will affirm.

## I. FACTS AND PROCEDURAL POSTURE

Henry Rome was sentenced for the underlying offense, felon in possession of a firearm, on May 21, 2003. Judge William G. Bassler imposed a sentence of fifty-two months of imprisonment, three years of supervised release, and a special assessment of $100. (Joint Appendix, *United States v. Henry Rome*, No. 09–3578 (filed Jan. 27, 2010) ("J.A.") at 7, 21–22.)

On May 19, 2006, while on supervised release, Rome submitted for drug testing a urine sample from someone else. He then submitted a second sample on the same day, which tested positive for marijuana. On June 21, 2006, he admitted to two violations of his supervised release: unlaw-

---

* Honorable Stewart Dalzell, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. It appears that this defendant's last name is actually "Roman," but the caption of the case—and every official document in it—lists him as "Rome."

ful substance use and failure to answer inquiries or follow instructions. (*Id.* at 16.) Judge Bassler did not revoke Rome's supervised release for these violations, but he imposed a special condition that obliged Rome to spend six months in a community corrections center, halfway house, or similar residential facility. (*Id.* at 17.)

Judge Bassler retired, and this case was then reassigned to Judge Susan D. Wigenton. After Rome left the community corrections center, on April 18, 2007 he was arrested by the Atlantic City Police Department and charged with various drug offenses related to cocaine. On July 11, 2008, he pled guilty in New Jersey state court to possession of cocaine with intent to distribute within 500 feet of a public housing facility. (*Id.* at 28.) In state court, he was sentenced to five years of imprisonment for that offense. (*Id.*)

Rome appeared before Judge Wigenton on June 18, 2009, and he conceded that he violated the terms of his supervised release by committing another crime, the cocaine sale in Atlantic City.[2] (*Id.*) There is no dispute that pursuant to 18 U.S.C. § 3583(e)(3) the statutory maximum for this violation is twenty-four months, and Rome's advisory Guideline range was twenty-four to thirty months. At this hearing, Rome's attorney asked Judge Wigenton to make the sentence for the supervised release violation run concurrently with Rome's five-year sentence in state court. He also argued that the statutory maximum should be eighteen months, rather than twenty-four months, because Rome had spent six months in a community corrections facility for the previous supervised release violation pursuant to Judge Bassler's 2006 order.

Judge Wigenton imposed a sanction of twenty-four months of imprisonment, to run consecutively to Rome's state-court sentence. (*Id.* at 3–4, 39.) Rome then filed a timely notice of appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this appeal under 18 U.S.C. § 3742(a). To review Rome's sentence, we "first ensure that the district court committed no significant procedural error," and if there is no such error we "then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall v. United States,* 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). *See also United States v. Tomko,* 562 F.3d 558, 567 (3d Cir.2009) (*en banc*). The fact that the sentence was a sanction for a violation of a condition of supervised release does not, as a general proposition, change this regimen. *United States v. Bungar,* 478 F.3d 540, 542 (3d Cir.2007).

## III. ANALYSIS

In Rome's appeal of Judge Wigenton's sentence, he raises three questions: (1) whether the sentence exceeded the statutory maximum because Rome had previously spent six months in a community corrections facility, (2) whether the district court failed to consider the types of sentences available, as 18 U.S.C. § 3553(a) may require, and (3) whether the sentence was overly punitive and unreasonable. Under the *Gall* rubric, the first two issues are "procedural" and we should analyze them before addressing the reasonableness of the sanction Judge Wigenton imposed.

### A. Statutory Maximum

■ Pursuant to the current version of 18 U.S.C. § 3583(e)(3), which is the section that applies to Rome's cocaine sale violation, "a defendant whose term is revoked

---

**2.** At the June 18 hearing, Rome admitted that he sold "crack cocaine." (J.A. 29.)

under this paragraph may not be required to serve on any such revocation ... more than 2 years in prison if such offense [the underlying offense of felon in possession] is a class C or D felony." As the Government explains, the phrase "on any such revocation" was added by an amendment that became effective on April 30, 2003. *See* PROTECT Act, Pub.L. No. 108–21 § 101(1), 117 Stat. 650, 651 (2003). Some courts had apparently held that the time limits in § 3583(e)(3) applied to the sum total of all violations, rather than to each violation. *See, e.g., United States v. Lewis,* 519 F.3d 822, 824 (8th Cir.2008). The amendment clarified that the maximum sentence applied to *each* violation. But because Rome committed the underlying offense (felon in possession) before April 30, 2003, there are *potential ex post facto* issues if we reject Rome's argument based on the fact that the two-year maximum applies to each violation. The Government makes another argument, however, that is equally compelling.

Even if we assume that we *should* aggregate all of Rome's periods of imprisonment for his violations of supervised release, Judge Wigenton's sanction remains within the bounds of § 3583(e)(3). Rome contends that the six months that he spent at a community corrections facility for the prior supervised release violation should count against the statutory maximum because those six months "represented a period of confinement akin to imprisonment." Rome Br. at 7. He argues that the maximum sentence that the district judge could impose for the cocaine sale violation was therefore eighteen months. Rome concedes that he "is aware that most federal appellate case law, including the case law in this circuit, holds that community corrections centers are not equivalent to prison," but "he raises his specific circumstances for this Court's consideration and to preserve the issue on appeal." *Id.* at 7–

8 (citing *United States v. Serafini,* 233 F.3d 758, 777 (3d Cir.2000)).

In *Serafini,* a jury convicted the defendant of perjury and the district court sentenced him to a split sentence of five months of imprisonment and five months of house arrest as a condition of supervised release. 233 F.3d at 762 & n. 2. The district court recommended that the Bureau of Prisons designate the Catholic Social Services of Lackawanna County Residential Program as the location for the *imprisonment* portion of this sentence. *Id.* at n. 2. On appeal, the Government contended that it was improper for the judge to recommend that Serafini serve his sentence at that facility because it is not a place of "imprisonment." *Id.* at 763. The Government argued that U.S.S.G. § 5C1.1 required that Serafini serve at least half of the minimum term in *imprisonment* and that the judge erred by recommending that Serafini serve that portion of the sentence at the community confinement center. *Id.* at 777.

We agreed in *Serafini* that the district judge would have violated the Guidelines if he had actually *imposed* a sentence of community confinement for the imprisonment portion of Serafini's sentence. We explained that under § 5C1.1, " 'community confinement' cannot constitute 'imprisonment' for purposes of fulfilling the requirement that one-half of a split sentence be satisfied by imprisonment." *Id.* But because the district judge made only a *recommendation* that Serafini serve the prison portion of his sentence at the community confinement center, we concluded that this recommendation was "erroneous" but "technically not reviewable." *Id.* at 778. In dicta we explained that the judge's sentence, if imposed, would have been unlawful. *Id.*

Thus, although *Serafini* does not speak *directly* to the issue at hand—that is,

whether time spent in community confinement counts against the statutory maximum under § 3583(e)(3)—other decisions persuade us that it should not.

For example, in *Reno v. Koray*, the Supreme Court held that a defendant is not entitled under 18 U.S.C. § 3585(b) to credit against his sentence for time that he spent in pretrial release at a community treatment center because a community treatment center is not "official detention," as § 3585(b) requires. 515 U.S. 50, 56, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995). The Supreme Court overturned our decision in the case, *Koray v. Sizer*, 21 F.3d 558, 567 (3d Cir.1994) ("we conclude that 'official detention' for purposes of credit under 18 U.S.C. § 3585 includes time spent under conditions of jail-type confinement"). In reversing that decision, the Supreme Court stated, among other concerns, that determining whether each defendant had been in " 'jail-type confinement' would require a fact-intensive inquiry into the circumstances of confinement, an inquiry based on information in the hands of private entities not available to the Bureau as a matter of right." *Koray*, 515 U.S. at 64, 115 S.Ct. 2021. Rome asks us to examine his personal situation and the specific facts of his time in community confinement, but the Government aptly argues that he thus offers a prime example of the Supreme Court's concern in *Koray*.

In *United States v. Cintron–Fernandez*, the applicable Guidelines provided that for the defendant to satisfy the minimum ten-month term of his sentence, the sentencing judge had to impose at least five months of imprisonment, but the other five months could be spent in community confinement or home detention. 356 F.3d 340, 347 (1st Cir.2004) (discussing U.S.S.G. § 5C1.1(d)). But the district judge sentenced the defendant to five months of home detention and three years of supervised release, with five more months of home detention as a condition. *Id.* The First Circuit held that "Cintron–Fernandez's sentence must include at least five months of imprisonment in order to satisfy the minimum term" but that the sentence imposed "provides for ten months of home detention with no 'imprisonment' at all." *Id.* The court reversed and remanded the case for resentencing. *See also United States v. Horek*, 137 F.3d 1226, 1229 (10th Cir.1998) ("Although the Guidelines permit community confinement to be 'substituted' for imprisonment, it does not necessarily follow that the four months Horek spent in community confinement constituted 'imprisonment' under the Guidelines."); *United States v. Iversen*, 90 F.3d 1340, 1343 (8th Cir.1996) (distinguishing between home detention and imprisonment and holding that a sentencing judge did not improperly impose "imprisonment" when the judge required some home detention as a condition of a sentence of *probation* ).

Rome also contends that U.S.S.G. §§ 5C1.1(c) and (d) support his position because they provide that in some cases a "sentence of imprisonment" may be satisfied by a combination of imprisonment and community confinement or home detention. These sections state that some community confinement or home detention may be "substitute[d]" for some imprisonment. Rome argues that this demonstrates that imprisonment is the same as community confinement or home detention.

But a better reading of these sections is that they confirm that community confinement and imprisonment are distinct from each other. Just because community confinement may be a total or partial "substitute" for imprisonment under these sections does not mean that community confinement is the *same thing as* imprisonment. Tellingly, §§ 5C1.1(c)(2) and (d)(2) also suggest that community con-

finement and prison are different because they do not permit a *complete* substitution of community confinement for the prison sentence.

Imprisonment is a sentencing sanction distinct from community confinement. For all of these reasons, we reject Rome's first procedural argument.

## B. *Kinds of Sentences Available*

■ Rome next contends that Judge Wigenton failed to consider "the kinds of sentences available," which is factor (3) of 18 U.S.C. § 3553(a).[3] At the sentencing hearing, Rome requested a split sentence—a combination of incarceration, a halfway house, and house arrest. He also asked that his sentence be imposed concurrently with his state court sentence.

On appeal, Rome contends that Judge Wigenton did not properly consider these requests and that the "district court focused exclusively on the need to send a message to the community." Rome Br. at 10. In support of this argument, Rome puzzlingly quotes Judge Wigenton's statement that " 'from the Court's perspective, there's a need to deter not only the community, but there's a need to deter you.' " *Id.* This statement shows the opposite of Rome's argument—that Judge Wigenton considered not only general deterrence but also specific deterrence of Rome himself.

From the transcript of the hearing it appears that Judge Wigenton listened to defense counsel's arguments on these points and made sure she understood the defendant's proposal regarding the split sentence. (*See* J.A. 34.) Just because Judge Wigenton did not adopt Rome's positions, or specifically articulate her rejec-

tion of them, does not mean that she failed to consider alternatives to incarceration. See *Rita v. United States,* 551 U.S. 338, 358–59, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007) ("Where a matter is as conceptually simple as in the case at hand and the record makes clear that the sentencing judge considered the evidence and arguments [*e.g.,* by listening to the argument, considering the evidence, and being "fully aware" of the defendant's issues] we do not believe the law requires the judge to write more extensively."). Judge Wigenton noted, moreover, that Judge Bassler had been lenient in continuing Rome's supervised release for the earlier supervised release violation, but that Rome had nonetheless rebuffed the probation office's attempts to help him and had been a repeat violator. (J.A. 37.) This is further evidence that Judge Wigenton indeed considered Rome's request for a different kind of sentence but rejected it.

For these reasons, we deny Rome's appeal on this point, as well.

## C. *Reasonableness*

■ There being no flaws with the two procedural issues that Rome raises on appeal, we now turn to his argument that the twenty-four-month revocation sentence is "overly punitive." Rome Br. at 10. Rome contends that Judge Wigenton's sentence is more than necessary to achieve the sentencing goals, especially as he will spend a total of seven years in prison for "what amounts to a relatively small drug possession." *Id.* at 11.

As the Supreme Court made clear in *Gall,* we review the reasonableness of

---

**3.** It is a nice question whether such an argument is embraced within the general teaching of *Bungar,* as that decision itself recognizes in its contrast of § 3553(a)(3) with § 3583(e), which conspicuously omits "the kinds of sentences available." *See Bungar,* 478 F.3d at

543 n. 2. We nevertheless noted the Second Circuit's observation that "this omission does not foreclose a court from considering 'other pertinent factors.' " *Id.* (quoting *United States v. Williams,* 443 F.3d 35, 47–48 (2d Cir.2006)).

Judge Wigenton's sentence, which was within the Guidelines range, under an abuse-of-discretion standard. *See also Tomko,* 562 F.3d at 568 ("In other words, if the district court's sentence is procedurally sound, we will affirm it unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided."). Rome has the burden of proving that the sentence was unreasonable. *United States v. Lessner,* 498 F.3d 185, 204 (3d Cir.2007).

At the violation hearing, Judge Wigenton expressed concern about Rome's relative youth, his repeat offenses, his continued failure to comply with the conditions of his supervised release, and the break he got from Judge Bassler on the previous drug violation. She also mentioned general deterrence and "the message that [she] send[s] to the community." (J.A. 38.) She did not say anything to suggest that she was sentencing him for improper reasons, and Rome has not pointed to anything in the record to the contrary.

Rome's only argument is that seven years in jail is somehow too long for what he sees as low-level drug offenses. But that contention does not begin to show that Judge Wigenton's sentence was an abuse of discretion, especially after *Tomko.*

## IV.  CONCLUSION

As Rome has raised no meritorious legal issue on appeal, we affirm the sanction Judge Wigenton imposed.