# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1616
_____

United States of America

*Plaintiff - Appellee*

v.

David S. Duffin

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: December 12, 2016
Filed: December 28, 2016

_____

Before RILEY, Chief Judge, WOLLMAN and SMITH, Circuit Judges.

_____

RILEY, Chief Judge.

A jury found David Duffin guilty of transporting a minor in interstate commerce with intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a). The district court[1] sentenced Duffin to 420 months imprisonment followed

_____

[1]The Honorable Timothy L. Brooks, United States District Judge for the Western District of Arkansas

by lifetime supervised release and included a provision that Duffin have no contact with his victims. Duffin appeals (1) his conviction, arguing the government failed to present sufficient evidence of his intent to engage in criminal sexual activity in his interstate transportation of the minor, and (2) the district court's no-contact recommendation/order, claiming the district court lacked statutory authority to implement such a provision. Because a reasonable jury could conclude Duffin transported a minor in interstate commerce with the requisite intent to engage in criminal sexual activity and because we lack jurisdiction to hear an appeal of a recommendation to the Bureau of Prisons, we affirm.

## I.    BACKGROUND

Beginning October 2014, Duffin communicated with then twelve-year-old Jane Doe using a Facebook account in which Duffin falsely represented himself to be his fictitious fourteen-year-old son, Will Cresbo, living in Hawaii. Jane Doe entered into an online relationship with the fictional Cresbo, and Cresbo eventually facilitated an in-person meeting between Jane Doe and Duffin, supposedly Cresbo's father. At the time, both Jane Doe and Duffin lived in Illinois. Duffin held himself out as a former talent scout for the television show America's Got Talent and gave Jane Doe voice lessons beginning in November 2014. Jane Doe and Duffin engaged in sexual activities at these voice lessons and also had sexual intercourse at Duffin's house in Illinois approximately five times. Jane Doe said Duffin planned to leave Chicago with her and live together, posing as father and daughter until she became eighteen, while still having sexual intercourse.

In March 2015, Jane Doe's parents discovered she had lied about her whereabouts, and her parents subsequently restricted Jane Doe from leaving the house and limited her use of her computer and monitored her cell phone. Jane Doe and Duffin made plans to leave the state of Illinois when Jane Doe's school was closed for spring break. On Saturday, April 4, 2015, Duffin picked up Jane Doe from her house

and left for Arkansas. Once they arrived in Bentonville, Arkansas, Duffin and Jane Doe checked into a Motel 6 and had sexual intercourse.

Jane Doe's parents reported her missing to the Chicago Police Department the same day Jane Doe and Duffin left the state of Illinois. Chicago Police Department investigators began to suspect Duffin after realizing the Cresbo Facebook account was fictitious and Duffin gave Jane Doe voice lessons. Investigators apprehended Duffin and Jane Doe in Arkansas and took Duffin into custody on April 9, 2015.

On June 3, 2015, Duffin was charged in a one-count indictment with knowingly transporting Jane Doe, then a thirteen-year-old female, in interstate commerce from Illinois to Arkansas with intent to engage in sexual intercourse for which Duffin could be charged with a criminal offense under Ark. Code Ann. § 5-14-103(a)(3)(A), all in violation of 18 U.S.C. § 2423(a). Duffin's jury trial began August 17, 2015. After the close of the government's case, Duffin moved for acquittal pursuant to Federal Rule of Criminal Procedure 29 on the ground the government had not presented sufficient evidence that Duffin's dominant purpose in transporting Jane Doe across state lines was to engage in criminal sexual conduct. The district court found the government had presented sufficient circumstantial evidence of Duffin's intent and denied the motion for acquittal. The jury returned a guilty verdict on August 19, 2015.

Following the jury trial, Duffin wrote Jane Doe a letter stating:

I took it to trial just so I could see you one last time. . . . I don't know if you understand I'm going to prison for over 20 years. You understand that right? . . . I'm going to try to get the prison in Kansas. Maybe when you're old enough you would come visit me.

Duffin sent another letter to Jane Doe following the disclosure of the initial Presentence Investigation Report (PSR) on December 22, 2015. Also in December

2015, the FBI recovered images stored on Duffin's cell phone depicting Jane Doe engaged in sexually explicit conduct. An amended PSR was filed February 2, 2016, calculating Duffin's advisory guideline sentence range as life imprisonment.

At the sentencing hearing held February 19, 2016, Jane Doe's mother reported Duffin's letters caused difficulty for Jane Doe and Jane Doe did not want to hear from Duffin. The district court then stated:

> I don't know if I can use the word "order," but I am going to send as strong of an admonition as I possibly can, both to Mr. Duffin but also to the Federal Bureau of Prisons . . . that they are to do what they can to ensure that there are no such communications, ever.

The district court went on to say: "I have no way of actually supervising the people that monitor the mail, nor do I have the ability to know, much less supervise, any third-party schemes."

The district court sentenced Duffin to 420 months imprisonment followed by supervised release for the remainder of his life. As part of its sentence, the district court included: "I am going to order you not to ever have contact with the victims in this case again. Period." The district court went on to explain:

> I'm going to ask that the recommendation section of the judgment in this case contain a specific recommendation that would actually be couched more in terms of an order that the defendant is ordered and that the BOP is requested to assist the Court in effectuating the order that Mr. Duffin is not to have any communication with "Jane Doe" or any of the other victims[2] that have been identified in this hearing and that they are to, to the extent that they have the ability, are to examine outgoing mail in an

---

[2]Duffin also used the Cresbo Facebook profile to communicate with and solicit explicit photographs from at least one other minor.

appropriate way that does not otherwise violate Mr. Duffin's rights, to intercept any attempts to communicate with the victims in this case.

Duffin's defense attorney objected to the no-contact provision, questioning the district court's authority to include such a provision as part of Duffin's sentence. The district court reasoned "it is at least envisioned in other context [sic] whereby the court does have the authority to restrict communications by appropriate instruction to the BOP" and clarified:

> [T]o the extent that the Court does not have the authority or that it is in some manner violative of Mr. Duffin's constitutional rights, then the Court would nevertheless make a recommendation to the Bureau of Prisons that it intercept any such communications and do what it can to enforce a lack of contact or to enforce a no-contact provision between the defendant and these victims.

In the section of the judgment designated for recommendations to the BOP, the district court included the following provision:

> After the trial, the defendant sent two letters (from his detention facility) to the minor victim of his offense of conviction. Consequently, at the time of sentencing, and at the victim's request, the Court ordered the defendant to have no contact with the primary victim in this case, LA, and a victim by means of relevant conduct, MP. . . . Therefore, to the extent permitted by its policies and procedures, it is recommended and requested that the BOP assist the Court in effectuating this order by examining the defendant's outgoing mail and other communications in an appropriate manner that does not otherwise violate the defendant's rights. If the BOP determines that the defendant has communicated (or attempted to communicate) with the aforementioned victims, the Court would recommend that the BOP take the Court's no contact order into consideration when determining what, if any, penalties and sanctions would be appropriate to impose.

Duffin appeals both the district court's denial of his motion for acquittal and the no-contact provision of his sentence. Having jurisdiction under 28 U.S.C. § 1291, we affirm Duffin's conviction. We conclude we lack jurisdiction to review the no-contact provision.

## II.    DISCUSSION
### A.    Sufficiency of the Evidence

Duffin first argues the district court erred in denying his motion for acquittal because the evidence introduced at trial was insufficient for a reasonable jury to determine, beyond a reasonable doubt, that Duffin had the dominant motive of criminal sexual conduct in transporting Jane Doe across state lines. "We review the denial of a motion for judgment of acquittal de novo, viewing the evidence in the light most favorable to the verdict. We will reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." United States v. McArthur, 836 F.3d 931, 938-39 (8th Cir. 2016) (citation omitted).

We agree with the district court the circumstantial evidence presented in this case was sufficient. Section 2423(a) prohibits "knowingly transport[ing] an individual who has not attained the age of 18 years in interstate or foreign commerce . . . with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense."

Duffin concedes he transported Jane Doe in interstate commerce, Jane Doe was under the age of fourteen years old at the time of the travel, and sexual intercourse with a person less than fourteen years of age is a crime under the law of Arkansas, yet Duffin argues the government did not prove he had the required intent to engage in criminal sexual intercourse with Jane Doe. To satisfy the intent element of § 2423(a), "illicit behavior must be 'one of the purposes motivating the interstate transportation,' but need not be the dominant purpose." United States v. Cole, 262 F.3d 704, 709 (8th Cir. 2001) (quoting United States v. Vang, 128 F.3d 1065, 1071 (7th Cir. 1997)).

-6-

"The sexual activity just may not be merely incidental to the trip." United States v. Hoffman, 626 F.3d 993, 996 (8th Cir. 2010).

Duffin argues the fact that Duffin and Jane Doe engaged in sexual intercourse in Illinois demonstrates Duffin did not have the requisite intent because it was not necessary for him to travel across state lines to engage in sexual intercourse. However, shortly before Duffin and Jane Doe left Illinois, Jane Doe's parents grounded her, limited her computer use, and began monitoring her cell phone. Jane Doe would not have been able to engage in sexual contact with Duffin. Jane Doe's testimony that (1) Duffin planned to hold her out as his daughter in Arkansas while still having sexual intercourse with her, and (2) they engaged in sexual intercourse immediately after arriving in Arkansas provides sufficient circumstantial evidence that a reasonable jury could find Duffin had the intent of transporting Jane Doe across state lines to engage in criminal sexual activity. See Cole, 262 F.3d at 709 (reasoning the defendant's intent could be inferred from the fact that the defendant transported a minor across state lines shortly after being ordered to have no contact with her and because the defendant engaged in sexual intercourse with the victim their first night out of state). The district court did not err in denying Duffin's motion for acquittal.

### B.    No-Contact Provision

Duffin also argues the district court did not have the authority to order him not to have contact with his victims. We review a court's authority to impose a particular sentence de novo. See United States v. Johnson, 517 F.3d 1020, 1023 (8th Cir. 2008). However, "a non-binding recommendation to the BOP is not reviewable as it is not a final decision of the district court." United States v. Kerr, 472 F.3d 517, 520 (8th Cir. 2006).

The district court stated it was going to "order [Duffin] not to ever have contact with the victims in this case again" and later clarified this was a recommendation for the BOP to be included in the recommendation section of the judgment. To the extent

the district court ordered Duffin not to have contact with his victims, the district court does not have statutory authority to issue such an order.  See 18 U.S.C. § 3551 (authorizing only sentences of a term of probation, a fine, or a term of imprisonment).

We do not have jurisdiction to review the provision recommending the BOP monitor Duffin's communications.  See Kerr, 472 F.3d at 520.  The First Circuit determined a provision included in a sentence was an order and not a recommendation because the district court's oral comments made clear the provision was an order and "[n]otably, the court did not utilize a space in the sentencing form earmarked for recommendations to the Bureau of Prisons." United States v. Cintron-Fernandez, 356 F.3d 340, 345 (1st Cir. 2004).  Unlike the provision in Cintron-Fernandez, the district court here clarified to "the extent it [did not] have authority" it would nonetheless make a recommendation to the BOP, which was then included in the space on the sentencing form marked for recommendations to the BOP.  Though the district court had no authority to order Duffin not to have contact with his victims, the actual provision was only included in the recommendation section of the judgment, and thus we do not have jurisdiction to review it on appeal.  See Kerr, 472 F.3d at 520.

## III.   CONCLUSION

Because there was sufficient evidence to support the jury verdict and because we interpret the no-contact provision as a non-binding recommendation to the BOP over which we have no jurisdiction, we affirm.

_____