CALLAHAN, Circuit Judge,
concurring in part and dissenting in part:
At issue is how much of the time that an alien spends in the custody of the U.S. Immigration and Customs Enforcement Agency (ICE) prior to the commencement of a criminal sentence must be credited against that alien’s sentence for illegal reentry. I agree with the majority that, under 18 U.S.C. § 3585(b), an alien is eligible for credit for all time spent in ICE custody from the day he or she is indicted or criminally charged. On that day, the alien becomes subject to the U.S. Attorney General’s control and thus is in “official detention” within the meaning of § 3585(b) as the Supreme Court and the U.S. Bureau of Prisons (BOP) have interpreted that term. Reno v. Koray, 515 U.S. 50, 55-56, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995); U.S. Dep’t of Justice, BOP Program Statement No. 5880.28(c).
The majority, however, also adopts a broader interpretation of § 3585(b), that “an alien is entitled to credit toward his criminal sentence ... for the period during which ICE detained the alien pending potential criminal prosecution.” Maj. Op. 377 (emphasis added). I dissent from this broader ruling and its application to this case because it (1) contravenes Supreme Court precedent, (2) violates the rules of statutory construction, (3) fails to defer to the BOP’s reasonable interpretation of § 3585(b), and (4) is prospectively problematic. ‘ Left in place, the rule will generate a slew of habeas petitions that will require district courts to conduct time-consuming evidentiary hearings to determine the elusive moment when pre-indictment immigration detention changed from “pending deportation” to “pending potential prosecution.”
I.
The majority’s broad rule, that time spent in ICE custody pending potential criminal prosecution is “official detention,” is inconsistent with Reno v. Koray. In that case, the Supreme Court held that time spent by a prisoner at a community treatment center after he pleaded guilty, but before he was sentenced, was not “official detention” within the meaning of § 3585(b). In so holding, the Court ruled that “credit for time spent in ‘official detention’ under § 3585(b) is available only to those defendants who were detained in a ‘penal or correctional facility,’ § 3621(b), and who were subject to BOP’s control.” Koray, 515 U.S. at 58, 115 S.Ct. 2021.[1]
*381 The majority’s interpretation of § 3585(b) cannot be reconciled with Koray. More than the “potential” for criminal prosecution is required before an alien in ICE custody becomes subject to the Attorney General’s control. The potential for prosecution of an alien in civil immigration custody exists from the moment an alien is apprehended by ICE. Rather, for an alien in ICE custody to be in “official detention” within the meaning of § 3585(b), as the Supreme Court has interpreted that term, the alien must be indicted or criminally charged.[2] Only then is an alien in ICE’s custody “subject to [the Attorney General’s] control” as a result of his or her immigration offense, and thus entitled to credit against his or her sentence. Koray, 515 U.S. at 58, 115 S.Ct. 2021. An ICE officer may play a part in building a criminal case, but the emergent intention of an ICE officer to refer a case for criminal prosecution has no bearing on whether an alien in ICE custody is subject to the Attorney General’s control and thus in “official detention.”
A review of the Supreme Court’s extensive analysis of the term “official detention” in Koray exposes the majority’s error. The Court looked to § 3585(b)’s larger statutory scheme, including other sentencing provisions showing that “official detention” means “in a penal or correctional facility” that is “subject to BOP control.” Id. at 58-59, 115 S.Ct. 2021 (internal quotation marks omitted). Specifically, the Supreme Court looked to “ § 3585(a) and related sentencing provisions,” and observed:
Section 3585(a) provides that a federal sentence “commences” when the defendant is received for transportation to or arrives at “the official detention facility at which the sentence is to be served.” Title 18 U.S.C. § 3621, in turn, provides that the sentenced defendant “shall be committed to the custody of the Bureau of Prisons,” § 3621(a), which “may designate any available penal or correctional facility ..., whether maintained by the Federal Government or otherwise ..., that the Bureau determines to be appropriate and suitable,” § 3621(b) (emphasis added). The phrase “official detention facility” in § 3585(a) therefore must refer to a correctional facility designated by the Bureau for the service of federal sentences, where the Bureau retains the discretion to “direct the transfer of a prisoner from one penal or correctional facility to another.” § 3621(b).
Id. at 58, 115 S.Ct. 2021 (alterations and emphasis in original).
The Court explained that its “reading of § 3585(a) is reinforced by other provisions governing the administration of federal sentences,” including language in § 3622 showing that “official detention” means “subject to BOP control.” Id. Reasoning that “the words ‘official detention’ should bear the same meaning in subsections (a) and (b) of § 3585 as they do in the above *382 related sentencing statutes,” the Court found that § 3585(b) turned on whether the detention was subject to the control of the BOP (or the U.S. Attorney General or USMS). Id. It ruled that “credit for time spent in ‘official detention’ under § 3585(b) is available only to those defendants who were detained in a ‘penal or correctional facility,’ § 3621(b), and who were subject to BOP’s control.” Id. The Court explained that “[t]he context and history of § 3585(b) also support this view,” as does the BOP’s Program Statement No. 5880.28(c), which is due deference. Id. at 59-61, 115 S.Ct. 2021.
Recognizing that its rule is inconsistent with the rule announced in Koray, the majority attempts to relegate the Supreme Court’s rule to the status of dicta. The majority relies on a footnote in Koray where the Court declined to address the-propriety of the BOP’s policy of granting “credit under § 3585(b) to a defendant who is denied bail pursuant to state law and held in the custody of state authorities.” Id. at 63 n. 5, 115 S.Ct. 2021. But what the Supreme Court did rule was not undone by a footnote stating what applications of that rule the Court declined to address. Thus, the broad rule announced by the majority in this case, which does not require an alien’s custody by ICE to be subject to the Attorney General’s control to qualify as “official detention” under § 3585(b), contravenes Reno v. Koray.
II.
The majority’s broad rule also runs contrary to the rules of statutory construction. As explained above, Koray’s interpretation of § 3585(b) followed the “normal rule of statutory construction that identical words used in different parts of the same act are [presumed] to have the same meaning.” Sullivan v. Stroop, 496 U.S. 478, 484,110 S.Ct. 2499, 110 L.Ed.2d 438 (1990) (internal quotation marks omitted). The majority’s interpretation of § 3585(b) violates this rule by interpreting “official detention” in § 3585(b) not to mean “subject to [the Attorney General’s] control,” even though that is part of the term’s meaning as it is used in subsection § 3585(a). Koray, 515 U.S. at 58, 115 S.Ct. 2021.
In doing so, the majority violates an even more fundamental rule of statutory construction, the rule that prohibits “[a]scribing various meanings to a single iteration” of a statutory term in different applications. Ratzlaf v. United States, 510 U.S. 135, 143, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) (internal quotation marks omitted); see also Clark v. Martinez, 543 U.S. 371, 386, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005) (rejecting “the dangerous . principle that judges can give the same statutory text different meanings in different cases”). The majority holds that “official detention” in § 3585(b) means one thing (what the majority says it does) in the context of custody by ICE but another thing (what the Supreme Court said it does in Koray) in the context of custody by a community treatment center. Such an approach to understanding a statute is in tension with the rule of law and should be rejected. Clark, 543 U.S. at 382, 125 S.Ct. 716 (to accept that the same statutory provision could have multiple meanings “would render every statute a chameleon, its meaning subject to change ... in each individual case”).
It is true that, in Koray, the Supreme Court also construed § 3585(b) in conjunction with the Bail Reform Act of 1984, which is not directly at issue here.[3] No- *383 ray, 515 U.S. at 56-57, 115 S.Ct. 2021. Doing so made sense “because the Bail Reform Act of 1984 was enacted in the same statute as the Sentencing Reform Act of 1984, of which § 3585 is a part.” Id. Accordingly, Congress could be presumed to have “legislated with reference to” the terms of § 3585 in drafting the Bail Reform Act. Id. at 57, 115 S.Ct. 2021 (quoting Gozlon-Peretz v. United States, 498 U.S. 395, 408, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991)). The same cannot be said of the Immigration and Nationality Act (INA). To the extent that immigration law is relevant to construing § 3585, it only confirms that immigration detention is civil rather than criminal in nature. See Cabral-Avila v. INS, 589 F.2d 957, 959 (9th Cir.1978).
The majority contradicts itself in attempting to align the terms “detention” and “release” in the INA with the same terms in the Bail Reform Act. Maj. Op. 373 (citing 8 U.S.C. §§ 1226(a)(l)-(2), 1231(a)(2)). First, as the majority later states, these terms of the Bail Reform Act “obviously” do not apply to civil immigration custody. Id. at 374 n. 8. Second, if Congress intended immigration “detention” within the meaning of the INA to be “official detention” within the meaning of the Sentencing Reform Act, then all time spent in ICE custody would be entitled credit. The majority rejects this proposition.[4]
By giving the term “official detention” a different meaning in a different category of cases to which it applies, the majority “invent[s] a statute rather than interpret[s] one.” Clark, 543 U.S. at 378, 125 S.Ct. 716. The majority’s invention might be sensible, but the job of judges is to interpret statutes, not to rewrite them.
III.
The majority also oversteps the judicial role by failing to provide any deference to the interpretation of “official detention” set forth in the BOP’s Program Statement. According to the BOP:
Official detention does not include time spent in the custody of the U.S. Immigration and Naturalization Service (INS) under the provisions of 8 U.S.C. § 1252 pending a final determination of deport-ability. An inmate being held by INS pending a civil deportation determination is not being held in “official detention” pending criminal charges.
BOP Program Statement 5880.28, at 1-15A.
The government appears to contend that this part of the program statement means that an alien is never in “official detention” while in ICE custody. I join the majority in declining to defer to this unreasonable interpretation of the program statement’s interpretation of a statutory term.
*384 But the program statement itself is “entitled to some deference.” Koray, 515 U.S. at 61, 115 S.Ct. 2021. By its text, the program statement does not deny sentencing credit for all time an alien is held by ICE. Rather, a reasonable inference from the program statement is that an alien in ' ICE custody is in “official detention” once “criminal charges” are “pending.” BOP Program Statement 5880.28, at 1-15A. As used, “pending” logically means filed but not yet resolved. See Black’s Law Dictionary (10th ed.2014) (used as a preposition, as it is here, “pending” primarily means “1. Throughout the continuance of; during <in escrow pending arbitration>”; used as an adjective, it primarily means “1. Remaining undecided; awaiting decision <a pending ease>”). While the program statement is ambiguous when read in isolation, a reading of the statement as allowing credit for time spent in civil immigration custody once criminal charges are filed is confirmed by other parts of the same statement, which emphasize that “ ‘official detention’ [means] subject to the discretion of the Attorney General and the U.S. Marshals Service with respect to the place of detention.” BOP Program Statement 5880.28, at 1-14F. An alien in ICE custody is subject to the Attorney General’s control when criminal charges have been filed and remain pending.[5] At this point, the Attorney General has “discretion to ‘direct the transfer of a prisoner from one penal or correctional facility to another.’ ” Koray, 515 U.S. at 58, 115 S.Ct. 2021 (quoting § 3621(b)).
The majority errs by failing to defer to this interpretation of “official detention” set forth in the Program Statement, as it is a reasonable interpretation of an ambiguous statutory term that was provided by the agency Congress charged with administering that term. Indeed, it is an interpretation that the Supreme Court has accorded deference. Koray, 515 U.S. at 61, 115 S.Ct. 2021; see also Tablada v. Thomas, 533 F.3d 800, 806-07 (9th Cir.2008).
IV.
The majority’s interpretation of “official detention” has the additional flaw of being difficult for district courts to administer. The majority remands “for the district court to determine in the first instance whether and when, during the pre-indictment period, Zavala’s detention status changed from detention pending deportation to detention pending potential prosecution.” Maj. Op. 379. The majority directs “the district court to conduct an evidentiary hearing,” but provides little guidance for determining when detention by ICE shifts from “pending deportation to ... pending potential prosecution.” Id. at 379. Presumably the government would be required to put on evidence showing when an ICE official of sufficient rank or involvement in a petitioner’s detention developed a sufficiently concrete intention to recommend criminal prosecution.
As the district court observed, this “interpretation of section 3585(b) would be extremely difficult ... to administer.” Zavala v. Ives, No. CV 13-3603-JFW E, 2013 WL 4763839, at *4 (C.D.Cal. Sept. 3, 2013). The majority dismisses this con *385 cern on the basis of four unpublished district court decisions granting credit for time spent in immigration detention.[6] These four decisions, which until today were contrary to the overwhelming weight of authority,[7] are hardly representative of the stream of habeas petitions we can expect under the majority’s rule. These decisions do not demonstrate that administering the rule will not burden district courts and the government by requiring fact-intensive inquiries into the purpose of an alien’s detention. The fact that the BOP sometimes grants sentencing credit for time spent in state or foreign criminal custody does not negate the district court’s practical concern either. The BOP practice does not require an inquiry into the elusive intent of individual officers, and it does not allow civil detention to be deemed criminal in nature based on the intent of an official who lacks authority to criminally prosecute.
The disproportionate cost to benefit of the majority’s rule is apparent in this case. Here, the difference between my perspective and the majority’s concerns some fraction of the sixteen days that Zavala was held by ICE before the indictment was filed. Under the majority’s approach, the district court will have to hold an evidentiary hearing probing the thought processes of ICE officials to determine when during these sixteen days Zavala’s custody became due to “potential criminal prosecution.” [8] I do not mean to discount the value of Zavala’s time, but only to highlight the practical problems inherent to administering the majority’s interpretation.[9]
*386 The bright-line rule adopted by most courts, that ICE custody becomes “official detention” within the meaning of § 3585(b) when an alien is indicted or criminally charged, makes much more sense as a matter of efficient administration. Given competing, equally reasonable interpretations, it is safe to say that Congress intended the interpretation that would be less problematic prospectively. Koray, 515 U.S. at 64, 115 S.Ct. 2021 (rejecting an interpretation of § 3585(b) that “would require a fact-intensive inquiry into the circumstances of confinement”). Moreover, a bright-line rule furthers Congress’s stated interest in providing prisoners and' the public with prompt, precise information about how much time a prisoner must spend in prison. S.Rep. No. 98-225, at 46 (1983), 1984 U.S.C.C.A.N. 3182, 3229 (recognizing the value of a “system of sentencing whereby the offender, the victim, and society all know the prison release date at the time of the initial sentencing by the court, subject to minor adjustments based on prison behavior called ‘good time’ ”); see also Koray, 515 U.S. at 64, 115 S.Ct. 2021 "(preferring an interpretation of § 3585(b) that “provides both [the government] and the defendant with clear notice”).[10]
V.
Despite my dissent from the majority’s broad rule, I agree with the majority’s narrower rule: “Where ICE retains an alien in custody subsequent to an indictment or the filing of criminal charges and the alien is then convicted of those charges, ... the alien is entitled to sentencing credit” for the intervening period of detention. Maj. Op. 378. Applying this rule to this case, I would affirm the district court’s denial of sentencing credit for Zavala’s first stint in ICE custody — the sixteen days from his detainment by ICE until his indictment in the U.S: District Court for the District of Nevada for illegal reentry.[11]
*387 When Zavala was indicted, however, he became subject to the Attorney General’s control and, in fact, was promptly transferred to USMS custody. I. would vacate and remand the district court’s denial of sentencing credit for Zavala’s second stint in ICE custody — the twelve days from his transfer back into ICE custody following dismissal of the criminal case against him due to improper venue until he was again charged for illegal reentry in the U.S. District Court for the Central District of California. This time period occurred after Zavala was indicted and initially became subject to the Attorney General’s control. While no criminal case was actually pending against Zavala during this period, Zavala has made a prima facie showing that he remained subject to the Attorney General’s control. See Boniface v. Carlson, 856 F.2d 1434, 1436 (9th Cir. 1988) (per curiam) (prisoner bears the burden to establish his entitlement to credit against his federal sentence for time served on his state sentence). As the majority notes, the language of the government’s proposed order of dismissal indicated its intention to refile criminal charges in the proper venue and expressly identified that venue. The dismissal may be fairly characterized as the equivalent of a transfer of a filed criminal case from one district to another for purposes of applying § 3585(b). Accordingly, on the record presented, it appears that Zavala remained subject to the Attorney General’s control and thus in “official detention” within the meaning of § 3585(b) during this time. On remand, unless the government rebuts this showing, Zavala would be due twelve days of credit toward his sentence for illegal reentry.
VI.
“Official detention” in § 3585(b) does not take on different meanings in different contexts, as the majority would have it. Instead, in all contexts, a defendant is in “official detention” within the meaning of § 3585(b) when he or she is (1) detained in a correctional facility or similar setting and (2) subject to the Attorney General’s control. This interpretation of § 3585(b) is compelled by Koray, correct as a matter of statutory construction and administrative deference, and prudent in terms of prospective effects. Applying this rule, I would affirm in part, vacate in part, and remand to the district court.

. While the Court used the words "subject to BOP's control,” the opinion as a whole makes clear that the Court also meant, more broadly, "subject to the discretion of the U.S. Attorney General, the Bureau of Prisons, or the U.S. Marshals Service.” Koray, 515 U.S. at *381 60 n. 4, 115 S.Ct. 2021 (quoting BOP Program Statement No. 5880.28(c) (July 29, 1994)). I use the shorthand "subject to the Attorney General’s control,” because the Attorney General's control is inclusive of that of the BOP and the U.S. Marshals Service (USMS), which operate under the Department of Justice.

. The government has not developed an argument that time spent in ICE custody is not “official detention” because ICE facilities are not penal or correctional facilities. Accordingly, I assume that ICE facilities qualify as penal or correctional facilities even though immigration detention is civil in nature. See 18 U.S.C. § 3142(a), (d) (indicating that "detention” within the meaning of the Bail Reform Act may include an immigration official’s custody of "a person charged with [a criminal] offense”).

. It does not follow that the Supreme Court’s extensive analysis of the Sentencing Reform Act, which is at issue here, and resultant ruling regarding § 3585(b)'s meaning, which *383 is controlling here, may be ignored or distinguished as only applicable to custody in a community treatment center. See Koray, 515 U.S. at 55-65, 115 S.Ct. 2021.

. Indeed, the Bail Reform Act supports the view that an alien in ICE custody is not in "official detention” before criminal charges are filed. The Act requires that "a person charged with [a criminal] offense” and awaiting trial, disposition of appeals, or commencement of his sentence be either "released” or "detained.” 18 U.S.C. § 3142(a); see also id. § 3143. Thus, a person, including an alien in immigration custody, id. § 3142(d), becomes subject to official detention once “charged with [a criminal] offense.” Id. §§ 1342, 1343. The INA, by contrast, only addresses the "detention” or "release” of a person who has been "arrested and detained pending a decision on whether the alien is to be removed from the United States.” 8 U.S.C. § 1226(a). Such civil immigration “detention” is not, as the majority agrees, “official detention” within the meaning of § 3585(b).

. The program statement does not say “pending criminal charging” or "awaiting the filing of charges” as the majority would prefer to read it. See Maj. Op. 375 n. 11. As explained above, other parts of the program statement make this clear. The BOP's inclusion of the word "determination” in the phrase "pending a civil deportation determination” but omission of such a verbal noun from the subsequent phrase "pending criminal charges,” also undermines the majority’s view that the latter phrase anticipates some action, as in "awaiting the filing of charges.”

. See Maj. Op. 377 n. 14 (citing Paz-Salvador v. Holt, No. 3:10-CV-2668, 2011 WL 3876268 (M.D.Pa. Aug. 31, 2011); Reyes-Ortiz v. Schultz, CIV. 08-6386(JEI), 2009 WL 4510131 (D.N.J. Dec. 1, 2009); Galan-Paredes v. Hogsten, No. LCV-06-1730, 2007 WL 30329 (M.D.Pa. Jan. 3, 2007); Guante v. Pugh, No. CV 305-92, 2005 WL 3867597 (S.D.Ga. Dec. 2, 2005)).

. See Maj. Op. at 374-75 n. 10 (collecting some such cases); see also, e.g., Madrigal v. United States, No. CV 14-2033-CJC-E, 2014 WL 3101444 (C.D.Cal. July 2, 2014), adopted, 2014 WL 3055908 (C.D.Cal. July 2, 2014); Abpikar v. Lompoc Fed. BOP, No. CV 12-00827 MMM (RZ), 2012 WL 3777156 (C.D.Cal. July 16, 2012), adopted, 2012 WL 3776499 (C.D.Cal. Aug. 30, 2012); United States v. Taymes, No. CR 07-108-S, 2010 WL 93695 (D.R.I. Jan. 8, 2010); see also United States v. Lopez, 650 F.3d 952, 966 (3d Cir. 2011) (upholding as "not clearly erroneous” the district court's denial of sentencing credit for ICE custody from February 24 through June 16, 2009, even though on February 24 the ICE agent who then interviewed the detainee described the matter as "a criminal illegal reentry prosecution”); Baselet v. Lappin, No. CV 311-097, 2012 WL 1167142, at *4 (S.D.Ga. Mar. 7, 2012), adopted sub nom. Baselet v. Wells, 2012 WL 1166960 (S.D.Ga. Apr. 9, 2012) (limiting one of the four district court decisions that the majority cites). Cf. al-Marri v. Davis, 714 F.3d 1183, 1187 (10th Cir.2013), cert. denied sub nom. Al-Marri v. Berkebile, - U.S. -, 134 S.Ct. 295, 187 L.Ed.2d 153 (2013) (lengthy pre-indictment detention was not "as a result of the offense for which the sentence was imposed” because it was based on independent authority to detain defendant as a witness or enemy combatant).

.In applying its rule, the majority appears to limit its reach such that "official detention” may not occur until, at the earliest, “a final removal order” has issued. Maj. Op. 379. This hedge may have the effect of reducing the prospective burden on the district courts and the government of administering the rule. But see id. 379 n. 18 (retreating from this hedge). Regardless, a fact-intensive inquiry into when, after a final deportability determination, ICE developed a sufficiently concrete intention to recommend criminal prosecution would still be required, at least when the government does not capitulate. I note that the majority’s limitation of its rule further unravels whatever logic underlies its rule. The limitation looks to whether deportation proceedings are actively ongoing rather than to whether the government has decided potentially to pursue criminal prosecution.

. I acknowledge that, in some cases, aliens may spend inequitably lengthy periods of time in ICE custody before unlawful reentry charges are initiated. This case does not ■ present an occasion to determine if a defendant would be entitled to credit for "civil detentions which are mere ruses to detain a defendant for later criminal prosecution.” United States v. Cepeda-Luna, 989 F.2d 353, 357 (9th Cir.1993) (recognizing a possible exception to the general rule that the Speedy Trial Act does not apply to immigration detention).

. ' My consideration of prospective effects is not my principal reason for construing § 3585(b) to require custody to be subject to the Attorney General’s control in order to qualify as "official detention.” It is clear, though, that the majority’s principal argument is one of policy, that similarly situated defendants should not be treated disparately. While this is a compelling policy concern, it is one that the Supreme Court has expressly dismissed in interpreting § 3585(b). Koray, 515 U.S. at 64, 115 S.Ct. 2021. Indeed, the same kind of disparity in treatment for similarly situated defendants would arise under the majority’s rule. Some defendants held in ICE custody will receive sentencing credit because their custody is "pending potential criminal prosecution,” while others — even some in the same facility, in the same cell— will not because they have not yet crossed that inscrutable line.

.I disagree with the majority’s argument that, under Koray, all ICE custody is "official detention” under § 3585(b) because the now-abolished Immigration and Naturalization Service used to fall under the Attorney General’s purview. Through the Homeland Security Act of 2002, Pub.L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002), Congress removed immigration custody from the Attorney General’s control. Congress legislated against the clear backdrop of the interpretation of § 3585(b) set forth in Koray, the government’s construction § 3585(b) in the BOP Program Statement, and the government’s longstanding practice of denying sentencing credit for *387 time spent in immigration custody. We must presume that Congress was aware of these “settled judicial and administrative interpretation[s]’’ when it enacted the Homeland Security Act. Comm’r of Internal Revenue v. Keystone Consol. Indus., Inc., 508 U.S. 152, 159, 113 S.Ct. 2006, 124 L.Ed.2d 71 (1993).